[Crim. No. 6839. Second Dist., Div. Three. Mar. 3, 1960.]

THE PEOPLE, Respondent, v. HELENE PENA PIERRE, Appellant.

586

Helene P. Pierre, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

VALLÉE, J.—A jury convicted defendant of assault by means of force likely to produce great bodily injury in that on October 7, 1958, she did unlawfully assault Janet Dutton by means of such force. Appearing in propria persona, she appeals from the judgment and the order denying a new trial.

Viewing the evidence most favorably to the People and assuming in favor of the finding of guilt the existence of every fact which the jury reasonably could have inferred from the evidence, as we must do (*People* v. *Caritativo*, 46 Cal.2d 68, 70 [292 P.2d 513]), the facts are these: About 3 p.m. on October 7, 1958, Gilman Fera arrived in Acton at the home of his mother and stepfather, Mr. and Mrs. Green. Janet Dutton and Lorena Ross accompanied him. The house was on the desert. Defendant lived on the adjoining property. The two properties had a common boundary.

The group visited with Mr. and Mrs. Green. Janet Dutton had a couple of drinks, "and on an empty stomach, it seemed to be affecting her too much." The others in the party did not drink. Fera suggested taking Janet for a ride to a friend's house a couple of miles away to get some fresh air. Fera and Janet went toward his car. He got in on the driver's side. Janet continued walking toward defendant's property. Fera got out of the car and followed slowly after her, thinking the fence on the boundary line would prevent her from going onto defendant's property. Janet "would occasionally take a little mis-step, indicating that she was slightly intoxicated." For a few moments Fera's vision was obstructed by a tool shed. When he had a clear view again he saw that part of the fence had been removed and that Janet had crossed over onto defendant's property.

Fera stopped at the fence because he "had been told many times never to trespass on Mrs. Pierre's property." Janet continued toward the rear of defendant's house. Fera kept

calling her to return but she did not respond. He then heard defendant say " 'What are you doing on my property,' in a very antagonistic manner." Janet appeared embarrassed and replied, "I am visiting the Greens next door, and I understand you have been making a lot of trouble for them." Defendant's tone of voice "changed and took on a friendly tone, and she said, 'Won't you come in?' " Janet said, "No." Fera attempted to get her to come back. Instead of going to him, she went around to the front of defendant's house. She seemed confused as to where she could enter the house. Defendant came around the house, put her arm around Janet in a friendly fashion, and escorted her out of Fera's sight into the house. Defendant then said she was going to call the "sheriffs." Janet endeavored to leave. Defendant grabbed her by the arms, held them behind her back, and pulled up on them. Janet heard a crack in her right shoulder, and lost consciousness. When she regained consciousness, defendant had her hands around Janet's throat and was pounding her head on the floor. She lost consciousness again.

About 15 minutes after Fera lost sight of Janet he went to the corner of defendant's house and put his ear to the wall. Fera testified: I heard defendant say to Janet, " 'You are not a bad kid. But you shouldn't mess around with a woman like Mrs. Green.' She [defendant] said she [Mrs. Green] would just as soon kill you [Janet] and stuff your body in that gully out there as to bat an eyelash, or words to that effect. . . . 'You just sit where you are, just stay where you are, one of your shoes is in that other corner of the room, but you just stay where you are. I have called the sheriffs, and they will be here shortly.' " Fera returned to the Green house and reported what he had heard. Lorena Ross asked Mrs. Green to call the sheriff's office. Fera then went back to defendant's house. Lorena accompanied him but stopped at the fence. Fera listened again and "heard a loud pounding sound like something was being pounded on the floor, and some weak cries of help, also a whisper." The voice was Janet's. Fera called Lorena. They went to the glass door at the rear of defendant's house and looked in. They saw Janet in a prone position. Defendant was on her knees, bending over Janet; her hands appeared to be on Janet's throat, shoulders, or head. Fera testified: "The hair was going up and down in rhythm to this thumping noise on the floor. It was obvious Mrs. Dutton, who was on her back, was having her head pounded upon the floor" by defendant.

Fera and Lorena tried the door. Defendant "ceased the pounding," left Janet, and said to them, "You get off my property. I have got a restraining order against you. I will kill you." Defendant picked up a butcher knife. Fera said to defendant they "would be glad to leave your property if you will just release Mrs. Dutton." Fera testified defendant "continued to threaten to kill us and said she had a gun and would shoot us." Defendant walked away and stood over Janet with the knife. Lorena went around the side of the house to another door out of Fera's sight. Defendant went to where Lorena was standing. Fera heard Lorena screaming for help. He went around the house and saw her running from the door. He jumped into the doorway and was met by defendant. She rushed at him with her fists and he "was forced to strike her in order to get to" Janet.

Fera reached Janet, who lay unconscious on the floor. He picked her up and laid her on a bed nearby. Defendant rushed at him again. She did not have the knife in her hand and he "Merely pushed her away" to protect himself. She fell on the bed, jumped off, and rushed at Fera several times.

The first thing Janet remembered on regaining consciousness was that Fera was picking her up and putting her on a bed. About this time, officers arrived and grasped defendant. She continued struggling, and they handcuffed her.

Janet sustained fractures of both humeri, the long bones in the arm near the shoulder. A physician testified the fractures indicated "a considerable amount of force" had been employed.

■ On appeal, the reviewing court is limited to a determination of whether there is in the record any substantial evidence, contradicted or uncontradicted, to support the conclusion reached in the court below. ■ After conviction, all intendments are in favor of the judgment and a verdict will not be set aside unless the record clearly shows that on no hypothesis whatever is there sufficient evidence to support it. ■ Resolution of the conflicting evidence is for the jury, not the reviewing court. (*People* v. *Osslo*, 50 Cal.2d 75, 92 [323 P.2d 397].) ■ Contrary to defendant's contention, the evidence is sufficient to sustain the verdict. (*People* v. *Kinman*, 134 Cal.App.2d 419, 422 [286 P.2d 28].) [■■ One may be guilty of assault by means of force likely to produce great bodily injury though the attack is made by use of the hands. ■ What force is likely to produce great bodily injury is a question of fact to be determined

by the jury. (*People* v. *Bumbaugh,* 48 Cal.App.2d 791, 797 [120 P.2d 703].) ■ The offense is complete when the act of the defendant was "a means of force likely to produce the injury." (*People* v. *Hahn,* 147 Cal.App.2d 308, 311 [305 P.2d 192].) The fact that defendant denied the assault cannot be considered.

We find no basis in the record for defendant's claim that the altercation arose from a conspiracy between the Greens, Fera, Lorena, and Janet. She says she was prejudicially prevented from developing such conspiracy. The record shows that she developed the fact that she had had a controversy with the Greens which resulted in litigation between them. There was no evidence from which an inference could be drawn that there was any agreement, express or implied, between the Greens, Fera, Lorena, and Janet to bring about the altercation or to effect any other purpose.

■ Defendant complains of the reception in evidence of a diagram. The diagram (apparently of the property of defendant and the Greens) was received without objection. In fact, her counsel expressly stated he had no objection to its admission in evidence. Defendant has no ground for complaint. (*People* v. *Millum,* 42 Cal.2d 524, 526, 528 [267 P.2d 1039].)

■ Over defendant's objection that it was irrelevant and immaterial, the butcher knife was received in evidence. Defendant asserts prejudicial error. There was no error. Since there was evidence that defendant was armed with the knife during the episode, it was properly received in evidence. (*People* v. *Hooker,* 130 Cal.App.2d 687, 693 [279 P.2d 784].)

■ It is asserted the court erred in admitting in evidence a copy of the record of Antelope Valley Hospital with respect to Janet. That was the hospital to which she was taken immediately after the assault. There was no objection to admission of the record in evidence, and defendant may not assert error.

■ Defendant asserts error in permitting Lorena to testify on redirect examination concerning acts of violence of which the witness had heard concerning defendant. On cross-examination of Lorena, counsel for defendant developed that she (Lorena) "had heard of her [defendant's] past record" and "The alleged fact that she was called Annie Oakley." On redirect the district attorney developed the matter further. The testimony complained of was within the

scope of the redirect examination. (Code Civ. Proc., § 2050.) Moreover, there was no objection to the testimony.

 On objection of the People, the court excluded a record of Los Angeles County Hospital concerning defendant. It was offered to show the extent to which defendant had been "beaten up." The record was admissible and it was error to sustain the objection. (Code Civ. Proc., §§ 1953e-1953h.) We are of the opinion the error was not prejudicial. Everything that appeared in the record was in evidence by oral testimony and the record of Antelope Valley Hospital relative to defendant. The physician who cared for defendant at the county hospital testified in her behalf in detail relative to her condition. The record of Antelope Valley Hospital relative to defendant was received in evidence, and the physician who attended defendant at that hospital testified to the injuries he observed on defendant on the day of the assault. Defendant has not shown that exclusion of the Los Angeles County Hospital record was prejudicial. (See *People* v. *Brust,* 47 Cal.2d 776, 785 [306 P.2d 480].)

 The court refused to admit in evidence an unsigned report of White Memorial Hospital offered by defendant. She claims error. The court did not err. The report was unsigned, and purportedly related to a matter which occurred more than a year before the offense charged. There was no evidence identifying the document or its mode of preparation or that it was made in the regular course of business. (Code Civ. Proc., § 1953f.)

 Defendant complains of the exclusion of a copy of a report of a deputy sheriff. Deputy Sheriff Edson was called in rebuttal by the People. On cross-examination he testified Deputy Sheriff Clarke wrote the arrest report; he did not assist in making it; he had read it and agreed in substance with its contents; he could not say he agreed with all of the substance, word for word. Counsel for defendant offered the report in evidence "to impeach" Deputy Edson. The People's objection was sustained. Counsel for defendant then offered the report for any purpose it might serve. The People objected. Counsel for defendant then said, "I will stipulate that it is not received in evidence, and that it may be returned to the deputy sheriffs." Later defendant called Deputy Clarke who testified to a statement made to him by defendant. Counsel for defendant then said, "At this time, I can withdraw the report, so we may return it." There is no basis for a claim of error.

Defendant offered in evidence the superior court file in a suit for declaratory relief between defendant and the Greens in which a restraining order and an injunction had issued. An objection was sustained. The court was fearful the jury might retry the issues therein involved. Defendant then requested that a minute order in that suit be read in evidence, which was done. The minute order showed that a stipulated judgment was rendered which, among other things, restrained both parties "from annoying, harassing or interfering with the other or trespassing upon the other's property." It appears that all the matters in the prior suit relevant to the issues in the present cause were in evidence and no prejudice is shown in the exclusion of the entire superior court file.

Three surveys were offered in evidence by defendant: one was of the town of Acton; one, of defendant's lot; and one, of defendant's lot and the Greens'. An objection was sustained on the ground no proper foundation had been laid. The objection was well taken and properly sustained.

The court excluded a tape recording of Chihuahua dogs barking. Defendant asserts error. Defendant testified she had two Chihuahuas, that they barked loudly when people came to her door, and she had made the tape recording. The recording would not prove the dogs barked on the occasion in question, but merely that they barked on the occasion of the recording. No error is shown.

A witness called by defendant testified he was a private detective and that he had been employed by defendant to guard her property. He was then asked, and he answered: "Q. Was this hiring of your services in connection with her troubles with the Greens? A. That was my understanding, yes." On objection of the People that the question called for a conclusion of the witness, the answer was stricken and the jury instructed to disregard it. Defendant says the court erred. There was no error. The ruling was correct. Patently, the answer was a conclusion of the witness and inadmissible.

Photographs offered by defendant were received in evidence. The next day, the court stated he had cut off the legends from two of the photographs. Error is asserted. There was no objection to the procedure. Defendant is precluded from asserting error on review. (*People* v. *Amaya*, 40 Cal.2d 70, 78 [251 P.2d 324].)

 When Mrs. Green was on the stand as a witness for the People she stated where she lived, where defendant lived, and how long she had known defendant. The following then occurred: ''Q. During that time, you have seen her—have you seen her assault anyone? A. Myself. Q. She beat you? A. Yes.'' Counsel for defendant then objected to the last question and moved to strike the answer. The court stated he could not see the materiality of the evidence and instructed the jury ''to disregard the testimony of this witness, other than where she lives and she met the defendant in 1953.'' Counsel for defendant moved for a mistrial, which was denied.[1] We must presume the jury obeyed the court's instructions. No prejudice is shown.

Defendant complains of numerous other matters with respect to her own testimony. These have to do with the striking of answers which exceeded the scope of the questions, the striking of answers which were not responsive, and the striking of voluntary statements. We have examined the record and find no ground for complaint.

Defendant contends the court unduly restricted cross-examination of witnesses for the prosecution. We find no basis in the record for the contention. She asserts the trial judge was biased and prejudiced. She predicates the assertion on statements by the court to her that she was not answering responsively or was volunteering. In each instance the court was correct and the admonitions were proper. Further, no objection was interposed to the court's statements. Other statements of the court to counsel of which complaint is made were entirely proper, and no objection was made to them. Defendant also contends the district attorney engaged in improper conduct in several instances. We have examined the record with care and find no prejudicial misconduct on his part. The same comment applies to defendant's claim of prejudicial conduct on the part of the People's witnesses.

 It is asserted the court erred in instructing the jury, and that the instructions were inadequate. Since the instructions are not part of the record on appeal, their correctness

---

[1] In denying the motion for a mistrial, the court stated: ''Well, of course, bear in mind that you opened this subject up on your cross examination of Mrs. Dutton, and then the question was asked. I didn't know the purpose of it, and there was no objection at all until after the answer was in, and certainly there would have been ample time to object. I don't know whether you were asleep or not, whether you desired to have the answer for the purpose of making a motion. The motion is denied.''

may not be challenged. (*People* v. *McClure,* 133 Cal.App.2d 631, 633-634 [284 P.2d 887].)

The case was well and fairly tried. Defendant was represented by able counsel who exerted his best efforts in her behalf. The jury resolved the conflicting evidence against her. We find no merit in any of the assignments of error.

The judgment and the order denying a new trial are affirmed.

Shinn, P. J., and Ford, J., concurred.