[Crim. No. 6729. In Bank. Mar. 9, 1961.]

THE PEOPLE, Respondent, v. TRESSIE NEAL SHIRLEY,
Appellant.*

*NOTE: This case was carried under the title of *People* v. *Neal* in the District Court of Appeal. It appears, however, that defendant is now married and her married name is Tressie Neal Shirley.

J. M. Lopes for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

GIBSON, C. J.—After a jury trial, defendant was found guilty of grand theft under an indictment charging that she unlawfully took $1,811 of funds of Tulare County between October 1, 1958, and April 30, 1959. Imposition of sentence was suspended for three years, and she was granted probation. She has appealed from the order granting probation and from an order denying a new trial. (Pen. Code, § 1237.)

Defendant received welfare aid for herself and minor children periodically commencing in 1948. She was informed repeatedly that it was her duty to keep the county welfare department advised of any changes in the family status or income and that anyone moving into or out of the house would affect her welfare budget. On October 21, 1958, defendant reported to a county social worker that her only income was the money she received from the welfare department, plus the occasional earnings of two of her children, and that there were no unrelated adults living with the family. She was again advised of her duty to keep the welfare department informed regarding income and household members, and she agreed to report any change in income or other financial conditions.

The social worker visited defendant at her home on April 14, 1959, and found a Mr. Shirley there, fully clothed but wearing bedroom slippers. Two days later, at the request of the welfare department, investigators from the district attorney's office called at defendant's home about 2:30 a. m. and found Shirley in bed in her bedroom. Defendant told the investigators that Shirley had been living in her home for at least six months and that during this time he had averaged spending $20 a week for household expenses and in addition had given her $10 a week in cash. Thus his total contributions during that period were approximately $800. She said that he had also helped with payments on a refrigerator. She admitted knowing that she should report all income received by her and any changes in the number of persons in the home. On April 23, 1959, she reported to the welfare department that she had married Shirley on the previous day. The department recomputed defendant's budget for the period in question and determined that she had been overpaid $1,811.

 The evidence is sufficient to support the implied findings of the jury that defendant made false representations of fact with intent to defraud and that, when she promised to report any change in her household and financial condition, she had no intention of keeping her promise. It is also clear that the welfare payments were made in reliance upon the false representations and that the county was defrauded.

 The jury was instructed, pursuant to section 1508 of the Welfare and Institutions Code, that where a needy child lives with his mother and stepfather, the amount of the grant shall be computed after consideration is given to the income of the stepfather and that a stepfather is bound to support, if able to do so, his wife's children if without support from such stepfather they would be needy children eligible for aid.[1] The jury was also told that under regulations of the State Board of Social Welfare a stepfather living in the home is responsible for the support of the mother of a needy child unless incapacitated and unable to support, that a man living in the home assuming the role of spouse has the same responsibility as that of a stepfather for the mother and the needy children, and that the income of a stepfather or other man assuming the role of spouse that is to be used in determining his ability to contribute is his take-home pay plus his income from all other sources except his wife's earnings.

The regulations set forth in the instructions are designed to assist welfare workers in the determination of need, which is one requirement of eligibility for assistance. The aid to needy children program established by sections 1500 et seq. of the Welfare and Institutions Code is coordinated with the federal program under which federal funds are made available to states having an approved plan for aid to needy children. (*Merced County* v. *Department of Social Welfare,* 148 Cal.App.2d 540, 541 [307 P.2d 46].) Under both the state and federal laws a needy child is defined as a needy person under the age of 18 years who has been deprived of parental support. (Welf. & Inst. Code, § 1500; 42 U.S.C. § 606(a).) The federal act requires the state plan to provide

---

[1]Section 1508 of the Welfare and Institutions Code provides in part: "Where a needy child as defined in this chapter lives with his mother and stepfather, the amount of the grant . . . shall be computed after consideration is given to the income of the stepfather. . . . Notwithstanding the provisions of Section 209 of the Civil Code a stepfather is bound to support, if able to do so, his wife's children if without support from such stepfather they would be needy children eligible for aid under this chapter. However, such liability for support shall not exceed the wife's community property interest in his income."

that the state agency, in determining need, shall take into consideration any other income and resources of a child claiming aid. (42 U.S.C. § 602(a)(7).) The administration of the public assistance programs, including aid to needy children, presents many complex problems. (See 42 Cal.L.Rev. 458; 45 Cal.L.Rev. 241.) Under the Welfare and Institutions Code the State Board of Social Welfare has the duty of enacting rules and regulations for administering these programs and is authorized to adopt regulations that are consistent with law and reasonably necessary for the administration of welfare. (Welf. & Inst. Code, §§ 103, 103.1, 1560, 2140, 3075.)

Under its express terms the provisions of the Welfare and Institutions Code are to be administered fairly, with due consideration not only for the needs of applicants but also for the safeguarding of public funds. (Welf. & Inst. Code, § 103.3.) If children are not in need, they are obviously not eligible for assistance regardless of who is paying for their support. As we have seen, the welfare department is authorized by section 1508 of the code to consider the income of a stepfather in computing the amount of aid to be granted, and it is unlikely that the financial need of a child will vary substantially depending upon the legality of the relationship between his mother and a man living in the home and assuming the role of spouse. It is reasonable to infer that a man assuming the role of spouse will contribute to the support of the mother and her needy child and will thus reduce their need, but it would be difficult and perhaps impossible for the department to ascertain the amount of contributions in each case. A practical solution of the difficulty is offered by the regulations which authorize the department to consider the income of such a man in the same manner as it would consider that of a stepfather. A decision declaring the regulations invalid would place a premium upon an illegal relationship and operate as a deterrent to marriage of the mother and the man assuming the role of spouse. The regulations are in accord with the primary purpose of the program, which is to aid needy children, and they are valid insofar as they direct the welfare department, in determining the amount of aid to be granted, to consider the man's income without regard to the existence of a lawful marriage.

To the extent that the instructions may have indicated that a man assuming the role of spouse, although not

married, had an obligation to support the mother and her children, they went beyond the issues and were erroneous. It does not appear, however, how the jurors could have been misled, since the question of such a man's liability for support had no bearing on whether defendant was guilty of theft by false pretenses, and the jurors were fully informed of the elements of that offense which they must find in order to return a verdict of guilty.

■ Defendant further contends that the trial court erred in admitting evidence of Shirley's income during the months in question. Testimony that Shirley was employed during this period was admitted without objection. Later payroll records showing that during the period he earned several thousand dollars were introduced over objection. Evidence of the amount of his earnings was relevant in view of the regulations calling for consideration by the welfare department of the income of a man assuming the role of spouse. It had a bearing on defendant's intent in making the misrepresentations and tended to corroborate her admission that Shirley had made regular contributions for the support of herself and her children.

■ The evidence of defendant's guilt is clear and convincing, and we are satisfied that there was no miscarriage of justice. (Cal. Const., art. VI, § 4½.)

The orders granting probation and denying a new trial are affirmed.

Traynor, J., Schauer, J., McComb, J., and White, J., concurred.

PETERS, J.—I dissent.

The conviction in this case was based, in part at least, on erroneous instructions to the jury and on inadmissible evidence. The trial court instructed the jury that, under the regulations of the Board of Social Welfare, a man living in a home assuming the role of spouse, even though not married, has the same legal responsibility as that of a stepfather to the mother of needy children, and that the income of such a man that is to be used in determining his ability to contribute to their support, is his take-home pay plus his income from all other sources.

The majority admit that the "legal responsibility" portion of this instruction was erroneous, but say it was not prejudicial, and then uphold the validity of the last part of the

instruction. To that extent, it is held, the regulation is valid. Based on this ruling, the majority then hold that evidence of the income of the man assuming the role of spouse, even though not married, was admissible because of the "regulations calling for consideration by the welfare department of the income of a man assuming the role of spouse."

In my opinion the challenged regulations are void in their entirety, instructions based upon them were erroneous, and evidence was erroneously admitted in reliance upon them. These matters were clearly prejudicial.

The effect of the majority opinion is to hold that the Board of Social Welfare, by a regulation adopted by it, can determine that a needy child, who is otherwise entitled to state aid, can be deprived of a certain portion of that minimum aid which the Legislature has determined to be necessary to support him (Welf. & Inst. Code, § 1511.5), solely because the mother is engaged in an extramarital relationship with a man who has no legal obligation to support the child, and who may, in fact, legally refuse to do so. To uphold such a regulation is to uphold the usurpation of legislative power by an administrative board.

The majority uphold this regulation because, so it is asserted, it affords a "practical solution" to the problem of determining whether a man living with the child's mother is actually contributing support money. It is contended that "[i]t is reasonable to infer that a man assuming the role of spouse will contribute to the support of the mother and her needy child." This reasoning is obviously unsound.

The Aid to Needy Children[1] chapter of the Welfare and Institutions Code (§§ 1500-1585) does not give the board the authority either to enforce such a "practical solution," or to indulge in such a so-called "reasonable" inference. In fact, the statutes, by implication, deny such authority to the board.

It is elementary law, of course, that the Legislature may confer upon an administrative board the power to "fill up details" of a legislative policy by enacting rules and regulations, as long as the Legislature establishes an adequate standard (*Knudsen Creamery Co. v. Brock,* 37 Cal.2d 485 [234 P.2d 26]; *California Emp. Com. v. Butte County etc. Assn.,* 25 Cal.2d 624 [154 P.2d 892]; *Butterworth v. Boyd,* 12 Cal.2d 140 [82 P.2d 434, 126 A.L.R. 838]). But it is equally elementary that the administrative agency can neither vary,

---

[1]Hereafter referred to as ANC.

enlarge, or change the scope of a legislative enactment, nor may it adopt regulations which lie outside the scope of the statute (*Knudsen Creamery Co.* v. *Brock, supra; First Industrial Loan Co.* v. *Daugherty,* 26 Cal.2d 545 [159 P.2d 921]; *County of Los Angeles* v. *State Dept. of Pub. Health,* 158 Cal.App.2d 425, 437 [322 P.2d 968], and cases cited therein). Certainly, the administrative agency has no authority to remedy or supply even an involuntary omission by the Legislature (*Whitcomb Hotel, Inc.* v. *California Emp. Com.,* 24 Cal.2d 753 [151 P.2d 233, 155 A.L.R. 405]). It is obvious that the regulation here under consideration violates all of these fundamental rules.

The regulation purports to authorize the board to base support payments to the mother of an ANC recipient upon the income of a man "assuming the role of spouse," whether or not, in fact, that income is being used for the support of the child. This is far more than an attempt to "fill up details" in a statute. It is an attempt, undoubtedly laudatory in purpose but nevertheless illegal, to enlarge the scope of a legislative pattern to cure an evil against which the Legislature just failed to provide.

The purpose of ANC is "to provide aid for *children* whose dependency is caused by circumstances defined in Section 1500." (Emphasis added.) (Welf. & Inst. Code, § 1503.) Section 1500 states that a "needy child" is one "who has been deprived of parental support or care" for various reasons. It is the welfare of the *child* that is the primary factor. So essential is this consideration that "the needs of the family group may [also] be considered in determining the needs of the child." (*Merced County* v. *Department of Social Welfare,* 148 Cal.App.2d 540, 543 [307 P.2d 46].)

The Welfare and Institutions Code is most specific in defining those instances in which a child otherwise entitled to aid may be deprived of that aid because of the acts of other persons. The child may be denied support if the custodial parent refuses to cooperate with law enforcement officers charged with enforcing the legal obligation of the absent parent (§ 1523), or refuses to accept vocational rehabilitation (§ 1523.5), or refuses to accept reasonable employment (§ 1523.6). These are the only situations that the Legislature determined should be sufficient to withdraw aid from a needy child.

These sections are exclusive. They enumerate the only situations that the Legislature deemed significant enough so

that a needy child should be disqualified from aid because of the acts of third persons. These sections give unmistakable evidence that the Legislature's intent was that aid is to be withheld from a needy child only when a person who is *legally* obligated to support the child, and is able to do so, refuses. These causes for refusing aid cannot be added to by administrative fiat. Certainly there is no legislative provision that expressly provides that a mother's act in engaging in an extramarital relationship will disqualify a child from aid, and there is no provision of the statute from which such a legislative intent can be implied. To the contrary, the clear intent of the sections above referred to is that aid is to be withheld only in those extreme situations carefully set forth by the Legislature. The regulation in question seeks to add a form of disqualification of the child not provided by statute.

The majority seek some solace from the provisions of section 1508 of the Welfare and Institutions Code. That section expressly authorizes the board to consider the income of a stepfather in determining the amount of aid to be granted. Based on this section the majority argue that this means that the board may "consider the man's income without regard to the existence of a lawful marriage." This argument is unsound. It completely overlooks, and so fails to mention, the fact that the reason why the Legislature provided that a stepfather's income may be used in computing the amount of aid granted to the child is that section 1508 carefully makes the stepfather legally obligated to support his stepchildren up to an amount representing his wife's community property interest in his income. The support of the child, the paramount concern of the statute, is thus assured. The child is given, as a substitute for aid, the legal right to enforce his right to support from a stepfather. But a "quasi spouse" has no legal obligation to support the child, and the woman with whom he is living has no legal right to any part of his income. As Mr. tenBroek points out in his article on *The Impact of Welfare Law Upon Family Law* in 42 California Law Review 458, at page 483, the board, by its regulation, has applied stepfather liability to the quasi spouse, and, although the law of this state does not recognize common-law husbands, under this regulation the board, by administrative fiat, has created common-law stepfathers. What the majority have done is to hold that a statute which carefully and unequivocally provides a legally enforceable substitute to the needy child for the state aid which is withdrawn, authorizes, by implication,

the withdrawal of state aid in a nonstepfather situation where there is no legally enforceable substitute.

The majority apparently were disturbed because there is no legal duty on a "quasi spouse" to support the child, because they attempt to justify their conclusion by the conjecture that "it is unlikely that the financial need of a child will vary substantially depending upon the legality of the relationship between his mother and a man living in the home." There is certainly no authority in the ANC statutes for withdrawing aid to a needy child on the basis of such an unsupported and unwarranted conjecture. It is unquestioned that any support actually provided to the mother from any source can and should be taken into consideration in computing payments. But, as one of the law review articles cited by the majority points out, these "common law" relationships often develop for the very reason that the man involved refuses to be obligated for the support of the children (42 Cal.L.Rev. 458, *supra,* at p. 483). The support a needy child may obtain from such a man is, to say the least, highly uncertain. The board does not have the legal right in fixing the allotment for the child to consider income which is unpredictable and uncertain, unless it is actually contributed to his support. The fundamental purpose of the ANC program is to help the innocent child who has been caught in the web created by the adults around him, not to punish the child for the misdeeds of these adults.

It is quite possible that in some respects the ANC program is abused. It is more than likely that the abuses at which this regulation is aimed are sufficiently serious to suggest the possibility of legislative remedial action. Certainly, the state should not be required to support children who are, in fact, being supported by others. It is equally true that deliberate attempts to subvert and defraud the welfare program should be prevented. But the existence of the need for reform cannot create in the Board of Social Welfare the authority to pass regulations to correct abuses that have developed in a plan evolved by the Legislature. It is for the Legislature and not for the board to determine policy. It is for the Legislature and not the board to determine whether a needy child is to have his allotment curtailed because his mother is living with a man who assumes "the role of spouse," whether such a man shall be legally obligated to support the child, and whether the child shall receive ANC aid unless a legal stepfather relationship has been established. Such policy decisions are

not to be made by an administrative board without guidance from the Legislature.

This does not mean that appellant cannot be convicted of grand theft if she misrepresented her actual income. The vice of the present case is that the jury was misdirected and improper evidence was admitted. These matters were clearly prejudicial.

I would reverse the orders appealed from.

Dooling, J., concurred.