[Civ. No. 343. Fifth Dist. Aug. 14, 1964.]

COUNTY OF KERN, Plaintiff and Respondent, v. MARGIE COLEY, Defendant and Appellant.

174

Young, Wooldridge, Paulden & Self and John B. Young for Defendant and Appellant.

Ralph B. Jordan, County Counsel, and Dennis N. Reid, Deputy County Counsel, for Plaintiff and Respondent.

BROWN, (R. M.), J.—Appellant appeals from a judgment in favor of the respondent for $4,600. Appellant was married to William Coley and was found to still be his lawful wife. During the period relative to this case she was the mother of two minor children, one fathered by a Mr. Owens, and another by a Mr. Butler, and the trial court found that during the period from November 1958 through April 1962 a Mr. Emory L. Jennings was an adult male person assuming the role of spouse to defendant, though not legally married to her.

During this same period of time the appellant received from the respondent warrants in the sum of $6,736 in monthly payments ranging from $107 to $168. These amounts were paid to the appellant pursuant to her application for and the grant of aid to needy children. According to the exhibits of the respondent she received $5,736 in aid, was eligible to receive $1,011, had a total need of $3,047, and had received an overpayment of $4,600. This excluded a period of approximately 10 months when there was no verification of employment of Mr. Jennings, and excluding these months, would have left an overpayment of $3,971.

During this time, according to the payroll records submitted to the court, all showing Mr. Jennings' address as 411 Powell Lane, Mr. Jennings had earned approximately $13,174.14, with his net earnings being approximately $10,407.05. The income of Mr. Jennings apparently considered by the Welfare Department totaled $6,810.

The appellant was unemployed during much of the period involved in this case. She was enlarging and remodeling her home at 411 Powell Lane in Bakersfield. She applied for aid on May 23, 1958, and in her application for assistance set forth a statement of facts relating to her eligibility, stating that she was not receiving any assistance or benefits from relatives, friends or otherwise. Again on June 5, 1958, she filed another statement of facts confirming that there were no unrelated adults living with the family. This was again confirmed in her statement of facts dated May 5, 1959, and on June 3, 1960, and on June 7, 1961. Each of these signed statements contains a clause stating that any person signing

the statement who wilfully states as true any material matter which he knows to be false is subject to the penalties prescribed for perjury in the Penal Code, referring to section 1550 of the Welfare and Institutions Code. Appellant also executed statements that she would notify the Welfare Department of any changes in property transactions, income or other financial conditions, marriage, et cetera.

On February 17, 1959, Mr. Jennings bought a metal cabinet at one of the local furniture stores on an account which the appellant cosigned as one of the vendees and which merchandise was delivered to the house at 411 Powell Lane. On May 9, 1959, he bought a TV lamp on which purchase tag the same address was shown. On June 6, 1959, giving the same Powell Lane address, he bought a camera. On that same date he and the appellant jointly purchased tires costing $32.78 on a conditional sales contract, appellant signing as a copurchaser, and the contract bearing the same address. On December 3, 1960, he bought floor covering costing $31.50, and the purchase slip showed the same address. On August 3, 1961, Jennings purchased bedroom furniture costing $113.24, but this was apparently delivered to another address and there is no explanation in the record. On April 21, 1962, Jennings issued a purchaser's credit statement to one of the local banks requesting $707 credit for a local carpet company on which he gave his name as the purchaser, that his spouse's name was Margie Coley Powell (appellant herein), that his home address was 411 Powell, that the value of the home if owned or buying was $12,000, that his spouse was employed as a domestic day worker. This application for credit was given to the carpet salesman while at the 411 Powell Lane address and in the presence of the appellant.

On Mr. Jennings' federal withholding exemption certificate for 1958 he gave his address as 131 N Street, claiming one exemption; for 1959 he gave the address of 411 Powell Lane, claiming one exemption; and his withholding tax statements for 1960, 1961 and 1962 listed the Powell Lane address.

While appellant was doing some remodeling at her home, on January 12, 1961, one of the social workers who had called without an appointment testified that while there, a man came to the house with groceries and was introduced by the appellant as her cousin, Mr. Jennings. Mr. Jennings' and appellant's cars were registered to the same address on Powell Lane. Jennings' driver's license also bore the same address. He answered the telephone at 8 a.m. on one occasion claiming

to be the appellant's cousin (as he did on several other occasions), and he cared for the yard at that address.

In March 1962, the Welfare Department case worker sent a memorandum to a special investigator for the department requesting that a night call be made at the appellant's house. On May 7th at about 2 a.m. the investigator, on being permitted entry into the house, discovered Mr. Jennings sleeping in one of the beds. At that time the appellant explained that Jennings was a cousin of hers who was staying overnight. Mr. Jennings identified himself by means of his driver's license which showed the Powell Lane home as his address.

The trial court found that Mr. Jennings was an adult male person assuming the role of spouse, though not legally married to the appellant; that he was able to support the defendant's children wholly or in part; that his liability for support did not exceed defendant's community property interest in his income as that interest is determined by Welfare and Institutions Code section 1508; that defendant had knowledge of the true facts and failed to disclose to the respondent that Mr. Jennings was an adult male person assuming the role of spouse to defendant; and that the appellant had obtained from respondent by virtue of these statements and representations which respondent relied upon, aid in the sum of $4,600, this sum resulting from the reduction of the original amount of $5,611 prayed for in the complaint.

■ Appellant raises only one issue in this appeal, as follows: To what extent, if any, is the income of a man assuming the role of spouse to the mother liable for the support of her children and, particularly, if at all times she is married to another man?

Title 42, United States Code Annotated, section 602, subdivision (a), sets forth the use of the state plan for aid to dependent children and subdivision (7) thereof states that a state plan must provide that the state agency take into consideration other income and resources of any child claiming aid to dependent children.

Welfare and Institutions Code section 1500 defines "needy child," and section 1508 (as amended 1961) sets forth the method for computation of aid as follows:

"Where a needy child as defined in this chapter lives with his mother and a stepfather or an adult male person assuming the role of spouse to the mother although not legally married to her, the amount of the grant made pursuant to section 1511 of this code shall be computed after consideration is given to

the income of the stepfather or such adult male person. The county granting aid shall determine if the stepfather or such adult male person is able to support the child either wholly or in part. Said determination shall be based upon a standard which takes into account the stepfather's or such adult male person's income and expenses under regulations set forth by the State Board of Social Welfare.

"Notwithstanding the provisions of section 209 of the Civil Code, a stepfather or such adult male person is bound to support, if able to do so, his wife's children if without support from such stepfather or adult male person they would be needy children eligible for aid under this chapter. However, such liability for support shall not exceed the wife's community property interest in his income.

"A natural father is not relieved of any legal obligation to support his children by the liability for their support imposed upon their stepfather by this section.

"As used in this section, 'adult male person' means any male person of age 18 years or older."

Prior to the 1961 amendment to section 1508 the Supreme Court, in *People* v. *Shirley,* 55 Cal.2d 521 [11 Cal.Rptr. 537, 360 P.2d 33, 92 A.L.R.2d 413], approved the rules and regulations which were adopted by the State Board of Social Welfare with respect to men assuming the role of spouse.[1] The 1961 amendment was presumably designed to meet the dissent of Justice Peters in the *Shirley* case. This amendment was construed in *People* v. *Rozell,* 212 Cal.App.2d 875, 878 [28 Cal.Rptr. 478], as a clarification of the law.

This action was brought against the appellant and no attempt has been made to hold Mr. Jennings liable for the support, and his liability for support not being in question, it is unnecessary to discuss whether or not the appellant has any community property interest in his income. (4 Witkin, Summary of Cal. Law, Community Property, §§ 8 & 9, pp. 2714-2715.) While she may have no legal right to any part of his income, such may be considered in determining the aid granted. The appellant did not testify, nor did Mr. Jennings, nor was there any attempt to refute the existence of the assumed spouse relationship, nor was any question raised at the trial as to how the Welfare Department considered Mr. Jennings' income. It was stipulated that the statement of payments be admitted as an exhibit except and excluding the amount as the overpayment which was a conclusion.

---

[1] Regulation C-155.

As is said in *Kelley* v. *State Board of Social Welfare*, 99 Cal.App.2d 865, 868 [222 P.2d 925], where the spouses convert community earnings into separate property, this may affect them personally, but such agreements are not binding upon the Welfare Department in determining the amount of aid to be awarded to an applicant. The general rule is well stated in *People* v. *Shirley, supra,* 55 Cal.2d 521, 525, as follows: "The administration of the public assistance programs, including aid to needy children, presents many complex problems. (See 42 Cal.L.Rev. 458; 45 Cal.L.Rev. 241.) Under the Welfare and Institutions Code the State Board of Social Welfare has the duty of enacting rules and regulations for administering these programs and is authorized to adopt regulations that are consistent with law and reasonably necessary for the administration of welfare. (Welf. & Inst. Code, §§ 103, 103.1, 1560, 2140, 3075.)

"Under its express terms the provisions of the Welfare and Institutions Code are to be administered fairly, with due consideration not only for the needs of applicants, but also for the safeguarding of public funds. (Welf. & Inst. Code, § 103.3.) If children are not in need, they are obviously not eligible for assistance regardless of who is paying for their support. As we have seen, the welfare department is authorized by section 1508 of the code to consider the income of a stepfather in computing the amount of aid to be granted, and it is unlikely that the financial need of a child will vary substantially depending upon the legality of the relationship between his mother and a man living in the home and assuming the role of spouse. It is reasonable to infer that a man assuming the role of spouse will contribute to the support of the mother and her needy child and will thus reduce their need, but it would be difficult and perhaps impossible for the department to ascertain the amount of contributions in each case. A practical solution of the difficulty is offered by the regulations which authorize the department to consider the income of such a man in the same manner as it would consider that of a stepfather. A decision declaring the regulations invalid would place a premium upon an illegal relationship and operate as a deterrent to marriage of the mother and the man assuming the role of spouse. The regulations are in accord with the primary purpose of the program, which is to aid needy children, and they are valid insofar as they direct the welfare department, in determining the amount of aid to be granted to consider the man's income without regard to the existence of a lawful marriage."

In cases where the applicant for aid to needy children has been charged with grand theft, as in *People* v. *Flores,* 197 Cal.App.2d 611 [17 Cal.Rptr. 382], the defendant and the assumed spouse were found guilty in the theft of $1,685 even though the assumed spouse turned over his unemployment check of $32 a week to the welfare recipient for approximately six months. In *People* v. *Rozell, supra,* 212 Cal.App.2d 875, there was little direct evidence that the assumed spouse had contributed very much to the recipient mother though the amount of overpayment was $1,562. In *People* v. *Shirley, supra,* the theft amounted to $1,811 though the total contributions by the assumed spouse were approximately $800 plus payments on a refrigerator.

A finding that Mr. Jennings was an adult male person assuming the role of spouse to the appellant although not legally married to her is well supported by the evidence. The Welfare Department, in line with regulation C-155, is authorized to consider that the assumed spouse has the same responsibility as that of a stepfather where he is around the home or maintaining an intimate relationship with the mother, has assumed substantial financial responsibility for the expenses and has represented himself to the community in such a way as to appear in the relationship of the husband and father. This relationship continued over a long period of time and was certainly more than casual. Mr. Jennings maintained constant, regular and frequent contacts with the mother by living at the house, paying family bills, opening charge accounts jointly in his and her names, and using the family address for mail, employer records and income tax purposes; and there was no confirmable alternate living arrangement other than with the ANC family.

The restitution to the County is authorized and required under Welfare and Institutions Code section 1506, which reads as follows: "Whenever any person has, by means of false statement or representation or by impersonation or other fraudulent device, obtained aid for a child not in fact entitled thereto, the person obtaining such aid shall make restitution . . . ."

The Welfare and Institutions Code is to be administered with due consideration for the safeguarding of public funds as well as the needs of the applicant. (*People* v. *Rozell, supra,* 212 Cal.App.2d 875, 878; *People* v. *Shirley, supra,* 55 Cal.2d 521, 525.)

"[T]he State Social Welfare Board is without authority to adopt regulations designed to permit the collection

of overpayments from recipients of aid under the Aid to Needy Children program in any case other than those involving actual fraud.'' (23 Ops.Cal.Atty.Gen. 29, at p. 31.)

 In *People* v. *Flores, supra,* 197 Cal.App.2d 611, 615, the court said, ''It is true that the gravamen of the offense was the concealment of his presence in the home.'' And by the concealment of the fact that there was an unrelated adult living with the family, the appellant was able to secure additional funds which she would not otherwise have been able to obtain. (See also *People* v. *Phipps,* 191 Cal.App.2d 448, 453 [12 Cal.Rptr. 681].)

 ''An applicant for public assistance, . . . has no vested right to such aid, . . .'' (*County of Contra Costa* v. *Social Welfare Board,* 199 Cal.App.2d 468, 473 [18 Cal.Rptr. 573]; *Bertch* v. *Social Welfare Dept.,* 45 Cal.2d 524, 529 [289 P.2d 485].)

Appellant has relied on *Department of Mental Hygiene* v. *Kirchner,* 60 Cal.2d 716 [36 Cal.Rptr. 488, 388 P.2d 720], with regard to the social evolution which is now developing and the change with regard to the *parens patriae* principle. This case is authority for holding that the principle that the spouse, parent or child of a mentally ill person shall be liable for his care, support and maintenance in a state institution is an invalid class discrimination in violation of a constitutional guarantee. However, in the case before us the matter of aid to needy children not being a right, but based on need, we are concerned only with the reimbursement of funds illegally obtained by the mother under the program, and not for a direct contribution based on her own resources.

 Judicial notice may be taken concerning State Welfare Board regulations. Under the ''Aid to Needy Children'' regulation, in order for the family to receive aid the children must be deprived of the support of one or both parents and be in need. (Welf. & Inst. Code, § 1500.) If they are not in fact in need, regardless of who is paying for their support, they are not entitled to aid. The regulations and the law upon which the judgment was based were promulgated to meet the situation where aid was given erroneously.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.