102 N.J. Super. 592 (1968)
246 A.2d 483
ANTHONY TARTAGLIO, ET AL., PLAINTIFFS-APPELLANTS,
v.
DEPARTMENT OF INSTITUTIONS AND AGENCIES, DIVISION OF PUBLIC WELFARE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 3, 1968.
Supplemental Briefs June 26, 1968.
July 22, 1968.
July 26, 1968.
July 31, 1968.
Decided September 19, 1968.
*593 Before Judges GAULKIN, LEWIS and KOLOVSKY.
Mr. Robert P. Subranni argued the cause for appellants (Mr. Leonard H. Wallach, of the Legal Services Project, Atlantic Human Resources, Inc., Office of Economic Opportunity, attorney).
Mr. Eugene T. Urbaniak, Deputy Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by LEWIS, J.A.D.
Plaintiffs, a family of seven, appeal from a determination of the Department of Institutions and Agencies (Department) affirming the action of the Atlantic County Welfare Board (Board) in discontinuing payments under the Assistance for Dependent Children (ADC) program created by N.J.S.A. 44:10-1 et seq., and 42 U.S.C.A. § 601 et seq.
The wife, mother of five children, after obtaining a divorce from their father, married her present husband, Anthony *594 Tartaglio. Before the remarriage she received welfare assistance. Subsequently, there was a rebudgeting by the Board of the family income and expenses which took into consideration the stepfather's earnings; the Board found that there was a monthly surplus of $75.66. Accordingly, it determined that the children were ineligible for continued assistance. On appeal to the Department a "fair hearing" was held, pursuant to N.J.S.A. 44:7-18 and 44:10-2, which culminated in that agency's affirming the decision of the Board. We here note that due process is satisfied in administrative proceedings if a fair hearing is accorded before the order becomes effective. In re Masiello, 25 N.J. 590 (1958); New Jersey Zinc Co. v. Board of Review, 25 N.J. 235 (1957).
On appeal to this court plaintiffs' principal arguments are based upon the contention that the Board was not authorized to take the stepfather's earnings into consideration because the stepfather is not required by law to support his stepchildren, citing Schneider v. Schneider, 25 N.J. Misc. 180, 52 A.2d 564 (Ch. 1947), and Falzo v. Falzo, 84 N.J. Super. 343 (App. Div. 1964). Compare Paragian v. Paragian, 48 N.J. Super. 207, 209-213 (J. & D.R. Ct. 1957), and Williamson v. Williamson, 183 Ky. 435, 209 S.W. 503, 505, 3 A.L.R. 799 (Ct. App. 1919). Neither the Board nor the Department purported to impose a legal obligation on the stepfather to support his stepchildren and, indeed, it was not within their power to do so.
The record before us reveals that plaintiffs are living together as a family unit; the stepfather considered the stepchildren dependents for purposes of withholding tax exemptions; he assumed the role of a spouse and father to his wife's offspring, and he was willing to assume "as much of the responsibility as he could."
In Connecticut where the statutes, as in New Jersey, do not impose an obligation of support upon a stepfather, a denial of financial assistance to dependent children of a mother who had remarried was sustained, the court stating:
*595 "The mother, the stepfather and her children are a family unit the resources of which should be considered. For the state to furnish aid, there should be an actual need. Need should not be created where none exists, based on the absence of a legal obligation on the part of the stepparent to support his stepchildren." Ladd v. Welfare Commissioner, 3 Conn. Cir. 504, 217 A.2d 490, 492 (Cir. Ct. App. Div. 1965).
People v. Owens, 231 Cal. App.2d 691, 42 Cal Rptr. 153, 157 (D. Ct. App. 1965), is to the same effect. It has been held that even absent a formal marriage, the income of one assuming the role of a spouse is includable in budgeting the family needs. See County of Kern v. Coley, 229 Cal. App.2d 172, 40 Cal. Rptr. 53, 56-58 (D. Ct. App. 1964); People v. Rozell, 212 Cal. App.2d 875, 28 Cal. Rptr. 478, 480-481 (D. Ct. App. 1963); People v. Shirley, 55 Cal.2d 521, 524, 11 Cal. Rptr. 537, 539, 360 P.2d 33, 92 A.L.R.2d 413 (Sup. Ct. 1961). But cf. Reich, "Individual Rights and Social Welfare: The Emerging Legal Isssues," 74 Yale L.J. 1245 (1965).
In the instant matter, the decision of the Department refers specifically to its rules and regulations, identified as the "Categorical Assistance Budget Manual," which, in pertinent part, provides:
"When an ADC family consists of a natural or adoptive parent, eligible child(ren) and a stepparent (the family may or may not also include ineligible child(ren)) * * * need shall be determined on the basis of the family budget unit. Need exists if the income of all members of the family is less than the sum of basic and special circumstance requirements for all family members * * *. Need does not exist if the income of the family equals or exceeds the sum of the basic and special circumstance requirements for all family members." Sec. 706.2, subsec. (c) (2) (a)
The Department adopted rules and regulations pursuant to N.J.S.A. 44:10-3 which authorizes their adoption, generally, "to secure for the State of New Jersey the maximum Federal financial participation that is available with respect to a program of assistance for dependent children" and to otherwise accomplish the purposes of the act and, specifically, *596 to provide that in determining need for financial assistance, there shall be taken into consideration all income and resources "of the dependent child and of the parent, parents, or other relatives with whom such child is living." N.J.S.A. 44:10-1, subsection (c) (2), in defining "dependent child," includes a child living with a "stepfather," and subsection (d) (1) provides that "parent or relative with whom a dependent child is living" means a person related to the dependent child in the manner described in subsection (c) (2).
The New Jersey enactment, N.J.S.A. 44:10-1 et seq., implements federal legislation dealing with "Grants to States for Aid and Services to Needy Families with Children." 42 U.S.C.A. § 601 et seq. Section 602 (a) (7) requires that a state agency, in determining need, shall take into consideration the income and resources "of any child or relative claiming aid to families with dependent children, * * *" and section 606(a) states that the term "dependent child" means a needy child
"(1) who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent, and who is living with his father, mother, grandfather, grandmother, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew, or niece * * *." (Emphasis supplied) (This section is incorporated by reference in section 606 (c) which defines the term "relative with whom any dependent child is living.")
We note also that under section 604 federal payments may be discontinued if the state fails to comply substantially "with any provision required by section 602(a)."
It is thus clear that the applicable administrative rules and regulations, the authority for which is not challenged, reflect an adherence to the express policy of the federal and state legislation to include, in a family budget formula, the income of a stepfather who assumes a spousal relationship. The wisdom of such legislation, even if it should be considered debatable, is not to be questioned by the judiciary. See Dacunzo v. Edgye, 19 N.J. 443, 454 *597 (1955). Accord, Galvan v. Press, 347 U.S. 522, 528, 74 S.Ct. 737, 98 L.Ed. 911, 920 (1954).
Moreover, the department concluded its determination with the observation that it would be appropriate for plaintiffs to reapply for assistance "whenever any significant reductions in income or increases in requirements should occur in this family situation." Note, N.J.S.A. 44:7-22, 44:10-2.
We find King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), to be factually and legally distinguishable. The issue in that case was the validity of the State of Alabama's "substitute father" regulation "which denies AFDC [Aid to Families With Dependent Children] payments to the children of a mother who `cohabits' in or outside her home with any single or married able-bodied man." 88 S.Ct., at p. 2130, 20 L.Ed.2d, at p. 1122. There the so-called substitute father of applicant's four children was a married man who had a family of his own consisting of a wife and nine children with whom he lived and who were dependent upon him for support. He went to applicant's home on "weekends and had sexual relations with her"; further, he was "not willing or able" to support her children. 88 S.Ct., at pp. 2132, 2132, 2133, 29 L.Ed.2d, at pp. 1124, 1125. The Alabama regulations with which the court dealt denied payments to applicant's children solely and per se because she cohabited with a man who was not her husband. The determination of the regulations' applicability turned on whether or not the man "cohabit[ed]" with the mother. In effect, the classification was held arbitrary since a denial of aid to otherwise eligible beneficiaries because of their mother's sexual behavior was a reason unrelated to any purpose of the statutes. New Jersey does not have a "substitute father" regulation which denies AFDC payments to the children of a mother who cohabits with a man.
The order of the Department is affirmed.