[Civ. No. 10630. Fourth Dist., Div. One. Jan. 28, 1972.]

COUNTY OF SAN DIEGO, Plaintiff and Respondent, v.
JOHN C. MONTGOMERY, as Director, etc., Defendant and Appellant;
JULIA HOLMES et al., Interveners and Appellants.

**COUNSEL**

Thomas C. Lynch, Attorney General, and Anthony M. Summers, Deputy Attorney General, for Defendant and Appellant.

Sharon Green for Interveners and Appellants.

Robert G. Berrey, County Counsel, and Lloyd M. Harmon, Jr., Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**AULT, J.**—The Director of the State Department of Social Welfare appeals from a judgment of the superior court decreeing Julia Holmes and

her two minor children were not eligible for public assistance under the Aid to Families with Dependent Children program (Welf. & Inst. Code § 11200 et seq.), and granting the County of San Diego's petition for a writ of mandate commanding the director to set aside his prior contrary decision. The decision of the director which the trial court reviewed and reversed in the mandate proceedings (See Welf. & Inst. Code, § 10962) was based upon a hearing held by a department referee pursuant to Welfare and Institutions Code section 10950. We conclude the trial court's judgment must be upheld because the evidence at the hearing demonstrated neither Mrs. Holmes nor her children were in need of public assistance.

In January 1967, Julia Holmes applied to the San Diego County Department of Welfare to obtain public assistance for herself and her two small children under the Aid to Families with Dependent Children program (AFDC). She and her children then were, and for some time prior thereto had been, residents of a home in San Diego operated by Synanon Foundation, Inc. By letter dated March 17, 1967, the county welfare department denied the application, basing the denial upon a policy change directive issued by the head of the department under which AFDC benefits to Synanon residents were to be discontinued. In brief, the specific reasons for the denial and the change in policy, as stated in the letter, were: Synanon was not subject to licensing regulations; it was not possible for the department to determine the value of "currently used resources" for residents of Synanon, or to verify that all AFDC funds were used for the benefit of the children and caretaker, or to verify that Synanon House was the best available substitute for the children's own home.

When her application for public aid was denied, Mrs. Holmes applied for a "fair hearing" before the State Department of Social Welfare pursuant to Welfare and Institutions Code section 10950. During May and July of 1967, a referee from the department heard testimony from 22 witnesses. The evidence showed residents of Synanon lived in a communal arrangement, with all of their needs being supplied by Synanon, which levied no specific charge but might exact payment according to the individual resident's ability to pay. The undisputed evidence established Synanon had been, and was, supplying "everything" to Mrs. Holmes and her children, charging them nothing. These goods and services, worth approximately $300 per month, included food, shelter, clothing, utilities, transportation, toiletries and private needs, and a modest amount for spending money. Mrs. Holmes testified she would donate any AFDC funds which were awarded her to Synanon. The maximum of public aid to which Mrs. Holmes would have been entitled, if eligible, was $191 per month.

The referee concluded Mrs. Holmes' claim should be granted. His deci-

sion, adopted by the Director of the State Department of Social Welfare on June 28, 1968, stated: "The discontinuance of AFDC on behalf of the claimant's children solely on the basis of her participation in the Synanon Foundation program is not warranted. . . . *Eligibility for AFDC must be determined on an individual basis.*

"*.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .*

"*Based therefore on the evidence,* it is found that the *claimant was eligible* for AFDC on behalf of her children on the basis of need, notwithstanding her residence in Synanon Foundation." (Italics added.) The county was ordered to pay the grant in the amount of the legal entitlement from the date of application.

The County of San Diego petitioned the superior court for a writ of mandate to compel the director to set aside his order. In his return to the writ, the director admitted Synanon furnished "everything" necessary for the support of Mrs. Holmes and her children, admitted the value of the goods and services furnished was in excess of $300 per month and conceded the maximum public aid to which Mrs. Holmes and her children would have been entitled was the sum of $191 per month. Julia Holmes intervened in the superior court action, individually and on behalf of her children, seeking affirmation of the director's order.

Apparently the matter was submitted to the superior court on the record of the·proceedings before the referee of the State Department of Social Welfare. Based upon the record, the trial judge found and concluded: (1) The department's finding Julia Holmes and her children were eligible for public assistance under the AFDC program on the basis of need was not supported by substantial evidence in the light of the whole record, and (2) Synanon provided for and met all the basic and special needs of Julia Holmes and her children. The judgment which followed in effect set aside and nullified the director's previous order establishing Mrs. Holmes' entitlement to AFDC funds. The director and Julia Holmes have appealed, and Mrs. Holmes has adopted the director's brief on appeal as her own.

### DISCUSSION

■ While the Director's brief on appeal touches the issue before us, the main thrust of the argument he advances misses the mark. Mistakenly implying the trial court's judgment holds to the contrary, he frames the issue on appeal as follows: "Eligibility for AFDC must be established by an individual determination of need, and not upon a general policy applied to all residents of Synanon." In our view, the issue to be decided in the fair hearing before the referee of the State Department of Social Welfare, which carried forward in the superior court action and carries forward

on appeal, was whether Mrs. Holmes and her children were, or were not, entitled to public assistance under the evidence and the applicable law. The hearing was not intended as a vehicle for the State Department of Social Welfare to question the propriety of the County Welfare Department's general policy toward Synanon residents or the alleged shortcomings in its investigation procedures. The director's correct claim that eligibility for AFDC must be established by an individual determination of need applies equally to the hearing before his own department. Certainly, if the evidence at that hearing established the ineligibility of Mrs. Holmes and her children for public aid because of lack of need, it was the director's duty to declare it, irrespective of the fact the county's original denial of her application may have been premised upon an improper general policy toward Synanon residents or resulted from an insufficiently individualized investigation.

Welfare and Institutions Code section 11200 et seq. are a part of the Aid to Families with Dependent Children program established by the Social Security Act of 1935 (See 42 U.S.C.A. § 601 et seq.). California courts have recognized the interdependence of the California and the federal act. (See *Pearson* v. *State Social Welfare Board,* 54 Cal.2d 184, 189, 214 [5 Cal.Rptr. 553, 353 P.2d 33].) The federal act, in section 606(a) defines a dependent child as a *"needy* child who has been deprived of parental support or care . . . ." (Italics added.) Similar eligibility requirements are set forth in Welfare and Institutions Code section 11250: "Aid, services, or both, shall be granted under the provisions of this chapter, and subject to the regulations of the department, to families with related children under the age of 18 years, . . . *in need thereof* because they have been deprived of parental support or care due to: (a) The death, physical or mental incapacity, or incarceration of a parent; or (b) The divorce, separation or desertion of a parent or parents and resultant continued absence of a parent from the home for these or other reasons; or (c) The unemployment of a parent or parents." (Italics added.) Deprivation of parental support alone, under the contingencies enumerated in subsections (a), (b) and (c), is not sufficient to entitle an applicant family to public aid under the program. Before public aid may be granted to a family, the section makes it unmistakably clear the children must be in need thereof.[1]

■ That applicants for public assistance under the AFDC program must demonstrate actual need is established by both California and federal

---

[1]Welfare and Institutions Code section 11251 makes provision for public assistance on behalf of qualified dependent children in certain institutions and foster homes. The section, by its terms, and by specific references to definitions contained in the federal Social Security Act, makes state licensing and regulation a prerequisite to eligibility. No contention is made here that Synanon qualifies or intends to qualify as such an institution or foster home.

case law. In *People* v. *Shirley*, 55 Cal.2d 521, at page 525 [11 Cal.Rptr. 537, 360 P.2d 33, 92 A.L.R.2d 413], the Supreme Court stated: "Under its express terms the provisions of the Welfare and Institutions Code are to be administered fairly, with due consideration not only for the needs of applicants but also for the safeguarding of public funds. (Welf. & Inst. Code, § 103.3) [now 11004]. If children are not in need, they are obviously not eligible for assistance *regardless of who is paying for their support*." (Italics added.) (See also *County of Kern* v. *Coley*, 229 Cal.App.2d 172, 180 [40 Cal.Rptr. 53].)

Appellant's reliance upon *King* v. *Smith*, 392 U.S. 309 [20 L.Ed.2d 1118, 88 S.Ct. 2128], to establish a contrary rule is misplaced. There, the Supreme Court declared invalid an Alabama "substitute father" regulation which disqualified a family for AFDC funds if the "substitute father" cohabited with the children's mother, regardless of whether he contributed to the support of the family. As the trial court carefully and succinctly pointed out in its memorandum opinion filed in this case, the "substitute father" in *King* was neither willing nor able to support the children of the cohabitating mother, and did not in fact support them. The Supreme Court in its opinion stated: "Further, there is no question that regular and actual contributions to a needy child, including contributions from the kind of person Alabama calls a substitute father, can be taken into account in determining whether the child is needy. In other words, if by reason of such a man's contribution, the child is not in financial need, the child would be ineligible for AFDC assistance without regard to the substitute father rule." (*King* v. *Smith*, 392 U.S. 309, 319-320 [20 L.Ed.2d 1118, 1127, 88 S.Ct. 2128, 2134-2135].)

In the instant case, the undisputed evidence at the hearing before the state department referee showed all the basic and special needs of Mrs. Holmes and her children were being furnished by Synanon at a higher level than AFDC regulations themselves would permit. Moreover, the director's pleading in the mandate proceedings admitted these facts to be true. In the superior court proceedings, both the pleadings and the record under review demonstrated Mrs. Holmes and her children were not eligible for AFDC assistance. The trial court's judgment requiring the director to set aside his contrary decision was correct.

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.