[Civ. No. 32835. First Dist., Div. Two. Dec. 10, 1973.]

PATRICIA MITCHELL, a Minor, etc., et al., Plaintiffs and Appellants, v. DAVID W. SWOAP, as Director, etc., Defendant and Respondent.

## COUNSEL

Marjorie Gelb, Mark Aaronson, Ellen Lake and Clifford Sweet for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, and David J. Bowie, Deputy Attorney General, for Defendants and Respondents.

## OPINION

**BRAY, J.**\*—Plaintiffs-appellants appeal from judgment of the Alameda County Superior Court denying motion for permanent injunction.

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## QUESTIONS PRESENTED

1. The regulation of the State Department of Social Welfare defining a "family unit budget" under the Aid to Families with Dependent Children (hereafter AFDC) program does not violate the Social Security Act.

2. The regulation does not violate equal protection of the laws.

## RECORD

Plaintiffs are young, unmarried women, aged at the time of filing the complaint herein, 16 and 17 years, respectively, each the unwed mother of an infant, and each sharing a house with their respective mothers, brothers and sisters, who are also AFDC recipients. Effective November 1, 1971, plaintiffs' AFDC grants were terminated and they and their children were included as additional "children" on the welfare budgets of their mothers, pursuant to California Department of Social Welfare Eligibility and Assistance Standard (EAS) Regulation section 44-213.31, hereinafter discussed. Plaintiffs then filed this class action to enjoin implementation of those standards. The court denied the relief sought and dismissed the action.

### 1. *No violation of the Social Security Act.*

██ Appellants contend that to include the child-mother and her child residing in her mother's home in such mother's family budget is violative of the Social Security Act.[1] EAS 44-213.31 has been interpreted by the Department of Social Welfare to maintain as one family budget unit the AFDC family in which one of the unmarried, minor, eligible children becomes pregnant and/or in fact has a child herself, and has made such application as in the instant case.

The Aid to Families with Dependent Children is one of the public assistance programs established by the Social Security Act of 1935 (42 U.S.C. § 601 et seq.). The state administers the program, but most of its costs are paid by the federal grant. No state is obliged to participate but those which do are bound by the standards established by Congress and the Department of Health, Education and Welfare.

A state regulation which conflicts with the Social Security Act eligibility standard is void (*King* v. *Smith* (1968) 392 U.S. 309 [20 L.Ed.2d 1118,

---

[1]The regulations involved in this action provide, in pertinent part: "E.A.S. 44-213.3 Needy persons living in the Home Who Shall Be Included As 'Recipients' in The Same Family Budget Unit, . . . 31. *Children*—all related eligible unmarried children [living in the same home] including the unborn child, for whom aid is requested by the child's parent or relative caretaker."

██

88 S.Ct. 2128]; *Townsend* v. *Swank* (1971) 404 U.S. 282 [30 L.Ed.2d 448, 92 S.Ct. 502]). On the other hand, a state regulation which does not conflict with a specific provision of the Social Security Act is valid *(Jefferson* v. *Hackney* (1972) 406 U.S. 535 [32 L.Ed.2d 285, 92 S.Ct. 1724]; *New York State Department of Social Services* v. *Dublino* (1973) 413 U.S. 405 [37 L.Ed.2d 688, 93 S.Ct. 2507]).

■ The AFDC program is an exercise in "cooperative federalism" wherein the state establishes its own assistance programs within the broad guidelines established by the Social Security Act. Subject to the qualification that the state may not impose eligibility requirements which would exclude persons eligible under the act, the state has virtually complete autonomy to set the standard of needs for welfare recipients and to determine the level of benefits actually paid.

■ The inquiry then is whether there are any specific provisions of the Social Security Act which require that under the circumstances here, plaintiffs and others in their class be given a fully independent AFDC grant. Plaintiffs have pointed out no such specific provision. They rely principally on the following three sections. Section 606(a) of the act (42 U.S.C.) defines a "dependent child" as one who (among other things) ". . . is living with his father, mother, grandfather, grandmother [or other designated relatives], *in a place of residence maintained by one or more of such relatives as his or their own home."* (Italics added.) Section 606(b) states: "The term 'aid to families with dependent children' means money payments with respect to . . . a dependent child or dependent children, and includes (1) money payments . . . *to meet the needs of the relative with whom any dependent child is living."* (Italics added.) Section 606(c) defines the term "relative with whom any dependent child is living" as "the individual who is one of the relatives specified in subsection (a) of this section and with whom such child is living . . . *in a place of residence maintained by such individual (himself or together with any one or more of the other relatives so specified) as his (or their) own home."* (Italics added.)

Interpreting the above sections as applying to plaintiffs' babies, it is clear that the children are entitled to receive AFDC support and that the relative with whom they are living, in the sense of the act, are their grandmothers and not their mothers, who are also living with the grandmothers (plaintiffs' mothers) and for whom the grandmothers are also receiving support.

In the instant case, plaintiff Patricia Mitchell's mother receives $465 per month welfare payment for herself, Patricia's child, and Patricia's six

brothers and sisters, and Patricia. If a separate grant were made, as plaintiffs claim should be made, to Patricia and her child, they would receive a welfare payment of $190 per month, and Patricia's mother would receive only $395, $120 less than the sum of the two independent grants. Thus, it appears that where the needy child is living in a home with relatives already receiving AFDC payments, an allowance for that child is less than if the child and his or her mother were living independently.

There is no express provision in the Social Security Act that states that a state may not, in providing AFDC to a needy child, take into consideration in fixing the amount to be awarded such child the fact that the relative or relatives with whom the child is living are already receiving AFDC awards. That a minor child becomes an unwed mother does not in any way change her status as a minor or her inclusion as a dependent child nor the inclusion of her child in the award to the person with whom both the mother and the child are living. The amount of the grant for both is a matter entirely within the competence of the state to determine (*Rosado v. Wyman* (1970) 397 U.S. 397 [25 L.Ed.2d 442, 90 S.Ct. 1207]).

Appellants concede that the Social Security Act does not explicitly state which of the several relatives with whom a dependent child may reside shall be considered the "relative with whom any dependent child is living" for purposes of determining AFDC eligibility. They contend that the mother of the child, when present, is necessarily that relative. However, the act itself does not reveal any distinction between parents and other relatives.

"The very title of the program, the repeated references to families added in 1962, Pub. L. 87-543, § 104 (a)(3), 76 Stat. 185, and the words of the preamble . . . show that Congress wished to help children through the family structure. . . . From its inception the Act has defined 'dependent child' in part by reference to *the relatives with whom the child lives.*" (Italics added; *Dandridge v. Williams* (1970) 397 U.S. 471, 479 [25 L.Ed.2d 491, 498, 90 S.Ct. 1153].) The preamble to the AFDC program (42 U.S.C. § 601) referred to in the above case provides "For the purpose of encouraging the care of dependent children in their own homes or *in the homes of relatives* by enabling each State to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such State, to needy dependent children and the parents *or relatives with whom they are living*. . . ." (Italics added.) Apparently, no distinction is drawn in the act between relatives and parents in the determination of which relative will be considered the "relative with whom any dependent child is living."

As hereinbefore stated, a reasonable interpretation of section 606(a), (b) and (c) of 42 U.S.C. is that the person in whose house the dependent child is living and who herself is receiving AFDC for all in the household, is the "person with whom such child is living" and is the one to whom the support payments should be made. At the very least, there is no inhibition in the act against such interpretation by the state.

In *Arizona St. Dept. of Pub. W.* v. *Department of Health, E. & W.* (9th Cir. 1971) 449 F.2d 456 (cert. den. 405 U.S. 919 [30 L.Ed.2d 789, 92 S.Ct. 945]), the court held, among other matters, that the state rule that payments for AFDC for a needy child will be made only to a relative who had legal custody of the child violated the federal act. In discussing the provisions of the act, the court pointed out that a needy child is "just as much a 'dependent child' within the meaning of the Act when he lives with a relative as when he lives with a parent. . . . And a relative qualifies as a 'relative with whom any dependent child is living' within the meaning of the Act whenever his or her relationship to the child is one of those specified and the child is actually living with him or her" (*id.* at p. 476).

In HEW's Handbook of Public Assistance Administration, section 5212 of the AFDC portion of the handbook states "If one or both parents are in the home, it would be extremely rare that another relative could be the 'relative with whom any dependent child is living'" (IV Handbook, § 5212). This section does no more than establish a guideline for the ordinary case and is not a binding interpretation of the act on this court (see *Wheat* v. *Hall* (1973) 32 Cal.App.3d 928 [108 Cal.Rptr. 508]). That case, at page 935, also points out that there is a substantial question as to the constitutionality of the handbook provisions in view of the subsequent enactment of federal regulations in 45 Code of Federal Regulations.

Appellants refer to a discussion by the House Committee on Ways and Means of the proposed Social Security bill (H.R. Rep. No. 615, 74th Congress, 1st Sess. 10 (1935)) and to a Senate discussion (S.Rep. No. 628, 74th Congress, 1st Sess. 17 (1935)) in which it is stated that the best provision that can be made for families with minor children needing aid is to provide it in their own homes. These articles, however, do not contemplate the situation where the mother chooses to make the home of herself and child in the home of her mother and other relatives, and where her mother is receiving AFDC for all eligibles living there.

As hereinbefore shown, section 606(b) and (c) provide that whichever relative of the dependent child is designated as the one with whom she or he is living, that relative must maintain the place of residence of the child

and is to receive money payments to meet his needs. It is doubtful if Congress would have intended an eligible dependent child to be herself the relative with whom a further dependent child is living when she (the minor mother) is, in fact, an eligible dependent, and is receiving aid through her mother. Particularly is this so when the minor mother's mother is, in fact, under a legal duty of care for the minor mother to maintain the home for the entire family and is receiving AFDC assistance on behalf of the entire family.

The cases cited by appellants are obviously not in point. They are *King* v. *Smith, supra,* 392 U.S. 309, holding that the Alabama regulation denying AFDC payments to children of a mother who "cohabits" with a single or married man was invalid; *Townsend* v. *Swank, supra,* 404 U.S. 282, overturning Illinois regulations which gave AFDC to 18 to 20-year-olds attending school, but denying it to college or university students of the same age; *Carleson* v. *Remillard* (1972) 406 U.S. 598 [32 L.Ed.2d 352, 92 S.Ct. 1932], voiding a California regulation which denied AFDC to children whose fathers were away on military service. The situations in those cases are clearly different than that in the instant case. A case which is more similar to ours, and which is full authority for holding the California regulation valid, is *Dandridge* v. *Williams, supra,* 397 U.S. 471, which held valid the Maryland regulation imposing a maximum limit on the total amount of AFDC aid which a family could receive, the effect of which reduced in larger families the per child support which would be received in smaller families.

2. *No violation of Equal Protection.*

 In addition to the determination of the relative with whom the needy children are living is the issue of the amount of assistance to be paid for them.

Appellants contend that to include the child mother and her child residing in the home of the grandmother and other relatives, in the grandmother's family budget, is violative of constitutional equal protection. They point out that if the child mothers lived in their own apartments with their babies, or with anyone but their mothers or other relatives receiving AFDC support, the child mothers would receive an independent grant for themselves and their children.

In *Dandridge* v. *Williams, supra,* 397 U.S. 471, the court pointed out that the statutory requirement that aid "shall be furnished with reasonable promptness to all eligible individuals" (42 U.S.C. § 602(a)(10)) required

merely that some aid be provided to all eligible families and all eligible children. The court upheld a state maximum grant system which imposed a ceiling on the amount of assistance any one family could receive in which it recognized both that aid could not equal the total amount of each individual's need in every family group and that there may be inherent economic disparities of scale in certain groupings. Under the Maryland system, "In general, the standard of need increases with each additional person in the household, but the increments become proportionately smaller. The regulation here in issue imposes upon the grant that any single family may receive an upper limit of $250 per month in certain counties and Baltimore City, and of $240 per month elsewhere in the State" (*id.*, at pp. 473-474, fns. omitted [25 L.Ed.2d at p. 495]). The appellees all had large families and claimed that the maximum grant limitation operated to discriminate against them merely because of the size of their families, in violation of the equal protection clause of the Fourteenth Amendment, and was in conflict with the purpose and provisions of the Social Security Act.

In concluding that the Maryland regulation was permissible under the federal law, the court said: "In *King* v. *Smith, supra,* we stressed the States' 'undisputed power,' under these provisions of the Social Security Act, 'to set the level of benefits and the standard of need.' *Id.*, at 334. We described the AFDC enterprise as 'a scheme of cooperative federalism,' *id.*, at 316, and noted carefully that '[t]here is no question that States have considerable latitude in allocating their AFDC resources, since each State is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program.' *Id.*, at 318-319." (P. 478 [25 L.Ed.2d, p. 498].)

"We see nothing in the federal statute that forbids a State to balance the stresses that uniform insufficiency of payments would impose on all families against the greater ability of large families—because of the inherent economics of scale—to accommodate their needs to diminished per capita payments. The strong policy of the statute in favor of preserving family units does not prevent a State from sustaining as many families as it can, and providing the largest families somewhat less than their ascertained per capita standard of need." (Pp. 479-480 [25 L.Ed.2d p. 499].)

The court stated at pages 480-481, footnote omitted [25 L.Ed.2d at page 499]: "the statute leaves the level of benefits within the judgment of the State . . . the practical effect of the Maryland regulation is that all children, even in very large families, do receive some aid. We find nothing in 42 U. S. C. § 602 (a)(10) (1964 ed., Supp. IV) that requires more than

this. So long as some aid is provided to all eligible families and all eligible children, the statute itself is not violated."

The court further pointed out, at page 482 [25 L.Ed.2d at page 500], that Congress had acknowledged in a 1967 amendment of the act (42 U.S.C. § 602(a)(23)), a "full awareness of state maximum grant limitations."

"In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U.S. 61, 78. 'The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific.' *Metropolis Theatre Co.* v. *City of Chicago*, 228 U.S. 61, 69-70. 'A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.' *McGowan* v. *Maryland*, 366 U.S. 420, 426." (*Id.* at p. 485 [25 L.Ed.2d at pp. 501-502].)

The regulation in question here is similar, in effect, to the Maryland regulation which the Supreme Court upheld, and is as reasonable.

In *County of San Diego* v. *Montgomery* (1972) 23 Cal.App.3d 174 [99 Cal.Rptr. 921], an applicant mother and her two children sought assistance while living at Synanon, which was denied by the San Diego County Department of Welfare. The court found no violation of the Social Security Act in the determination that the needs of the claimant and her dependent children were taken care of by the Synanon Foundation and upheld the denial of aid.

There is a considerable and reasonable difference in the situation of plaintiffs in the case at bench and that of an unmarried parent under 21 who, with her child, does not share a residence with the parent's mother who is also receiving AFDC. Such a family obviously requires an independent grant to provide for basic needs which in appellants' cases are satisfied by inclusion in the AFDC grants to their mothers. Nor is the situation the same as if plaintiffs were adults. In such case, the grandmothers no longer would have legal responsibility for the plaintiffs and could not receive AFDC because of them.

The test to be applied in welfare cases to determine whether or not a state classification is violative of the equal protection clause is discussed

extensively in *Jefferson* v. *Hackney, supra,* 406 U.S. 535. The court therein cited *Dandridge* v. *Williams, supra,* as emphasizing that "in 'the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.' A legislature may address a problem 'one step at a time,' or even 'select one phase of one field and apply a remedy there, neglecting the others.' *Williamson* v. *Lee Optical Co.,* 348 U.S. 483, 489 (1955). So long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straitjacket. . . ." (*Jefferson* v. *Hackney, supra,* at p. 546 [32 L.Ed.2d at p. 296].)

*Hypolite* v. *Carleson* (1973) 32 Cal.App.3d 979 [108 Cal.Rptr. 751], dealt with an entirely different situation than that in the case at bench. There, the court was dealing with the proper interpretation of the phrase "continued absence" from home of the minor's parents, which phrase appears in section 11250, Welfare and Institutions Code. The court held that the state welfare regulation which "draws distinctions of eligibility [for AFDC aid] based solely upon whether or not the parents who have abandoned children reside together" violated the Social Security Act.

The opinion states that as there had been two conflicting rulings of HEW on the issue, the court could place little reliance on them and that the court is not bound by HEW rulings which conflict with the provisions of the Social Security Act. In our case, however, as we have shown and as demonstrated by analogy with *Dandridge* v. *Williams, supra,* there is no conflict between the California regulations and the provisions of the Social Security Act.

Appellants also refer to Margaret M. Barron v. Herschel Saucier, et al., and Christine Spellers v. Herschel Saucier, et al., U.S. District Court, Northern District of Georgia, Atlanta Division, Nos. 17,159 and 17,237, respectively. These cases held that in determining the amount of AFDC aid, the Georgia State Plan for AFDC, which did not consider variation in child support payments received from a child's father violated the Social Security Act, obviously an issue in nowise relevant to the instant issue.

Of significance is a ruling, filed in this court by the Attorney General, of the Administrator of the Social and Rehabilitation Service of the Department of Health, Education and Welfare, which deals with the exact question before this court. The ruling states "A Regional Office has recently requested clarification concerning an AFDC policy question. . . .

The question asked whether a State may be permitted to budget a three-generation AFDC family living in one household as one budget unit, or whether the child with her own child must be budgeted as a separate AFDC unit.

"In reply, there is no known Federal policy which would prohibit a State from establishing one budget unit where a three-generation AFDC family is residing in the same household, as long as all those eligible to receive AFDC are included in an AFDC grant, in one capacity or another. Current Federal regulations do not limit the State's freedom in this area to fashion its own administrative methods of setting up the budget for individuals eligible to receive AFDC.

"This interpretation has the concurrence of the Office of General Counsel."

"The contemporaneous administrative construction of a statute by an administrative agency charged with its enforcement and interpretation is entitled to great weight unless it is clearly erroneous or unauthorized. [Citations.]" (*Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 140 [98 Cal. Rptr. 281, 490 P.2d 793]). *Dandridge* v. *Williams, supra,* hereinbefore discussed, shows that the HEW ruling is neither erroneous nor unauthorized.

The case at bench causes us to comment on a growing practice of persons dissatisfied with regulations made by agencies, particularly those dealing with social welfare matters, to rush into overburdened courts for rulings which, at least in the first instance, should be obtained from higher agencies having supervision and control. A part of the overload of the courts is based upon this practice, which should not continue.

The circumstances in which appellants reside together with their own status as dependent children amply satisfy the above requirement that the treatment afforded them has a rational basis and establishes a rational basis for the regulation, which bears a substantial relation to a legitimate state interest.

Judgment affirmed.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied January 9, 1974, and appellants' petition for a hearing by the Supreme Court was denied February 7, 1974.