[No. B161615. Second Dist., Div. Six. Aug. 26, 2004.]

In re Marriage of MARIA and RANDY JACOBSEN.
MARIA JACOBSEN, Appellant, v.
RANDY JACOBSEN, Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions directed to be published follow.

## COUNSEL

Price, Postel & Parma, Penny Clemmons and Timothy E. Metzinger for Appellant.

Misho, Kirker & Brown, Vanessa Kirker and Jacqueline Misho for Respondent.

Fred J. Hiestand and Howard L. Dickstein for the Pala Band of Mission Indians, the Rumsey Band of Wintun Indians and the United Auburn Indian Community as Amici Curiae on behalf of Appellant.

## OPINION

**GILBERT, P. J.**—Federal law directs state courts to give full force and effect to American Indian tribal law and custom in civil matters. Chumash tribal custom and tradition provides that funds distributed by the tribe to its members should not be used to pay spousal support to nonmembers. Here we hold that the family law court is not required to give full force and effect to the Chumash custom and tradition because it is inconsistent with California law. Maria Jacobsen, an enrolled member of the Santa Ynez Band of Mission Indians (the Tribe), appeals an order of the family law court awarding $7,415 monthly temporary spousal support to her former husband, Randy Jacobsen. We affirm.[1]

Randy also appeals and challenges a subsequent order of the family law court awarding him $3,500 monthly temporary spousal support pending determination of this appeal. We affirm.

### FACTS

On May 31, 2000, Maria filed a petition to dissolve her 11-year marriage to Randy. They have two minor children and formally agreed that Randy would have physical custody of the children approximately 20 percent of the time.

Maria is not employed and is a full-time homemaker. As an enrolled member of the Tribe, she receives a "per capita distribution" of Chumash Indian gaming revenues in accordance with a revenue allocation plan approved by the Bureau of Indian Affairs. The annual per capita distribution has steadily increased following the initial distribution in 1995. In 2001 it amounted to $312,000 and in 2002, it increased to $316,000. Maria uses the after-tax distributions to support herself and her children. She has also invested a substantial amount of the distributions in stock brokerage accounts.

Randy is employed as a herdsman at his parents' dairy farm, "Jacobsen Dairy Farm." In an amended income and expense declaration, Randy declared that his annual salary in 2002 was $28,519. Randy also owns a hay and feed business. During the years 1998 through 2001, the business had earned annual profits varying between $40,180 (1999) and $3,158 (2000). On average, the hay and feed business earned $20,000 annually.

On February 5, 2002, Randy filed a motion seeking, among other things, an award of temporary spousal support pursuant to Family Code section

---

[1] We refer to the parties by their first names, not from disrespect, but to ease the reader's task.

3600.[2] Maria responded, in part, that it is the custom and tradition of the Tribe that per capita distributions not be provided to nontribal members for spousal support. She relied upon title 28 United States Code section 1360(c), requiring states to accord "full force and effect" to tribal ordinance or custom unless the ordinance or custom is "inconsistent with any applicable civil law."[3]

Maria also presented evidence of Tribal Resolution 852, providing that per capita distributions shall not be allocated to former spouses who are not members of the Tribe. In part, the resolution states: "It is the custom and tradition of said Tribe that said distributed funds should not be provided, distributed or allocated to nonmember spouses of Tribal members or nonmember ex-spouses of Tribal members in the form of spousal support awards . . . . [¶] Pursuant to 28 U.S.C. § 1360 (c) all State courts shall give full force and effect to this Tribal law in determining civil causes of action involving this Tribal law and policy." (*Ibid.*) The Tribe adopted the resolution on August 1, 2002.

After a hearing during which Maria and Randy testified, the family law court ordered Maria to pay $7,415 monthly support to Randy, commencing July 1, 2002. The court rejected Maria's arguments, reasoning in part that the Tribe's custom and tradition is "counter to the very important policy and interest of the State . . . in providing for support of families." In fixing the amount of the award, the family law court also stated that "it is unreasonable to conclude that [Randy] is only making the amount he claimed [$3,158] for the amount of hay he bought and sold. If that were [the] case, he is underemployed . . . ."

Randy then sought a writ of execution upon Maria's stock brokerage accounts. At Maria's request, the family law court stayed enforcement of its order pending appeal. It required Maria to post a $100,000 bond.

Randy later sought temporary spousal support pending this appeal. After a hearing, the family law court ordered Maria to pay Randy $3,500 monthly spousal support, based upon the "Santa Clara Support Schedule." (Rule 1415 (c), Santa Barbara Superior Court Local Rules ["The court as adopted the Santa Clara Support Schedule for the purposes of determining the correct amount of temporary spousal support"].) The court stated that $3,500 "was the adequate figure," and that Randy was "underemployed." It also stated that the $3,500 award was "based upon the facts and circumstances" presented at

---

[2] All further statutory references are to the Family Code, unless stated otherwise.

[3] 28 United States Code section 1360(c), provides:

"(c) Any tribal ordinance or custom heretofore to hereafter adopted by an Indian tribe, band, or community in the exercise of any authority which it may possess shall, if not inconsistent with any applicable civil law of the State, be given full force and effect in the determination of civil causes of action pursuant to this section."

the spousal support hearing two months earlier. In awarding temporary support pending appeal, the court reasoned in part that "the children should have someplace to visit [their father] which . . . does not depart radically from the place they have when they visit their mother."

Maria appeals and contends the family law court erred by not according "full force and effect" to the tribal custom and tradition set forth in Tribal Resolution 852. (28 U.S.C. § 1360(c).) Randy also appeals and contends that the family law court erred by reconsidering and reducing the amount of temporary spousal support pending appeal.

Amici curiae Pala Band of Mission Indians, Rumsey Band of Wintun Indians, and the United Auburn Indian Community have filed a thoughtful brief and assert, in part, that Tribal Resolution 852 is consistent with California law because family law courts have discretion to exclude separate property in setting support and to consider "[a]ny other factors [e.g. Tribal Resolution 852] [that] are just and equitable." (§ 4320, subd. (n).)

## DISCUSSION

Maria argues that the family law court did not possess jurisdiction to order temporary spousal support to be paid from her tribal gaming distributions to Randy. She relies upon 28 United States Code section 1360, and correctly asserts that Indian tribes are "semi-independent . . . with the power of regulating their internal and social relations." (*White Mountain Apache Tribe v. Bracker* (1980) 448 U.S. 136, 142 [65 L.Ed.2d 665, 100 S Ct. 2578] [Indian tribes retain attributes of sovereignty over their members and territories]; *Boisclair v. Superior Court* (1990) 51 Cal.3d 1140, 1147 [276 Cal.Rptr. 62, 801 P.2d 305] ["deeply rooted" policy of leaving Indians free from state jurisdiction and control].) Maria also points out that section 1360 is not a congressional waiver of the sovereign immunity of Indian tribes. (*Middletown Rancheria v. Workers' Comp. Appeals Bd.* (1998) 60 Cal.App.4th 1340, 1347 [71 Cal.Rptr.2d 105] [for example, state workers' compensation laws do not apply to Indian gaming employer].)

Maria also argues that Tribal Resolution 852 is not inconsistent with California law because California law does not mandate payment of temporary spousal support from the paying spouse's separate property. (§§ 3600, 4320, subds. (e) & (n) ["In ordering spousal support . . . the court shall consider . . . (e) The obligations and assets, including the separate property, of each party. . . . (n) Any other factors the court determines are just and equitable."]; *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 481 [274 Cal.Rptr. 911] [trial court possesses broad discretion in applying spousal support guidelines].) She

also points to the strong policies of Indian autonomy and self-sufficiency. (E.g., *In re Humboldt Fir. Inc.* (N.D. Cal. 1977) 426 F.Supp. 292, 296 ["Section 1360(c) is designed to encourage tribal autonomy and self-government, which is a prerequisite to the economic self-development necessary to enable Indian participation in American life"].) Maria adds that she presented expert legal opinion concerning the effect of Tribal Resolution 852.

For several reasons, we reject Maria's arguments.

■ First, the family law court had jurisdiction to order Maria to pay temporary spousal support to Randy because Maria initiated the dissolution proceedings, appeared, and participated therein. (*In re Marriage of Purnel* (1997) 52Cal.App.4th 527, 538 [60 Cal.Rptr.2d 667] [family law court possesses jurisdiction to order Indian spouse to pay child support and attorney's fees to non-Indian spouse].) "[W]hen a Native American . . . undertakes to avail himself or herself of the services of a state court in a domestic relations matter, . . . the state court has jurisdiction to act and to grant whatever relief is contemplated by the action initiated by the Native American." (*Ibid.*)

Second, the tribal custom and tradition set forth in Tribal Resolution 852 is inconsistent with California law and public policy regarding temporary spousal support.

■ Section 3600 authorizes the family law court to award temporary spousal support as is necessary "for the support of the wife or husband." Temporary spousal support allows the parties to maintain living conditions and standards pending trial and division of the community property and obligations. (*In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 594 [124 Cal.Rptr.2d 342].) It results from the mutual duty of support inherent in marriage. (§§ 720 [spouses have obligations of mutual support] & 4300 [spouses shall support each other].) The family law court possesses broad discretion to award temporary spousal support, subject only to the moving party's needs and the other party's ability to pay. (*In re Marriage of Murray*, *supra*, 101 Cal.App.4th 581, 594.)

■ Tribal Resolution 852 is at odds with the strong public policy, as evidenced by California statutory law, requiring spouses to support each other. As such, the tribal custom and tradition is "inconsistent" with California law.

Of importance here is that the family law court did not order the Tribe to satisfy Maria's obligation of temporary spousal support. Facially, the support orders also are independent of and unrelated to any particular source of funds that may be used to satisfy them. (*In re Marriage of Purnel*, *supra*, 52

Cal.App.4th 527, 540.) Furthermore, once Maria deposited her tribal distribution in a bank account or a securities account, for example, "the money involved lost its identity as immune Indian property." (*Id.*, at p. 541.)

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *

The orders concerning temporary spousal support are affirmed. Each party shall bear his or her own costs on appeal.

Yegan, J., and Perren, J., concurred.

---

*See footnote, *ante*, page 1187.