Filed 2/27/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| TIFFINI PATERAS, | 2d Civ. No. B336065 |
| | (Super. Ct. No. 23FL01125) |
| Plaintiff and Respondent, | (Santa Barbara County) |
| | |
| v. | |
| | |
| THOMAS ARMENTA, | |
| | |
| Defendant and Appellant; | |
| | |
| SANTA BARBARA COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES, | |
| | |
| Intervener and Respondent. | |

Here we decide that payments a father receives from an Indian tribe's general welfare program are income in calculating child support. Why? Except for indigency, parents are obligated to support their children.

Thomas Armenta appeals child support and attorney fee orders the superior court awarded in favor of Tiffini Pateras. We conclude, among other things, that the court properly included $5,000 a month in payments Armenta receives from the Santa

Ynez Band of Chumash Indians' (Chumash tribe) general welfare program as income for calculating his child support obligations. We affirm.

## FACTS

Armenta and Pateras began their relationship in 2012. Pateras gave birth to their child M.A. in 2014. Armenta and Pateras did not marry. They both worked at the Chumash Casino Resort. They lived together until 2017, when they separated, and Pateras moved in with her parents. They entered an initial "child custody and support" agreement in 2017.

Armenta is a "Chumash descendent" who works at the Chumash tribal office in "future planning." He earns $114,000 a year in salary. He also receives $5,000 a month from the Chumash tribe's general welfare program.

Pateras filed a petition and request for order in the trial court. In August 2023, she filed a request that Armenta pay her child support and attorney fees. On October 12, 2023, the court ordered Armenta to pay $448 a month for "temporary child support" and $2,000 in attorney fees.

The trial court held subsequent hearings on November 15 and December 12, 2023. At the December hearing, the court adopted Pateras's DissoMaster calculations without prejudice. At a later hearing, the court heard arguments from counsel on whether the payments Armenta received from the Chumash tribe could be considered as income in determining his child support obligations. It continued the case to February 6, 2024.

At the February 6th hearing, the trial court ruled the tribal payments Armenta receives may be considered as income in determining his child support obligations. It ruled this does not conflict with tribal authority, because "the American Indian

Nations" let their "members and their descendants" participate "in the specific general family law structure." It ordered Armenta to pay monthly child support in the amount of $1,053 and $5,000 as "need-based" attorney fees.

## DISCUSSION

### *Tribal Benefits Taxable Under Federal Law*

"Indian general welfare benefits" are "not subject to federal income taxation." (*United States v. Jim* (11th Cir. 2018) 891 F.3d 1242, 1250.) But federal law "imposes federal income taxes on the per capita payments an Indian tribe distributes from the net revenue of Indian gaming activities." (*Ibid.*) In *Jim*, tribal members claimed payments received from the tribe were exempt from federal taxation because they were "Indian general welfare benefit[s]" that " 'promote the general welfare of a tribe' " (*id.* at p. 1245), and the payments "help them live on the reservation without outside assistance" (*id.* at p. 1246).

But *Jim* determined the critical factor was the financial *origin or source* of the tribal payments. It held tribal members who receive tribal payments are liable for taxes because they do not meet their burden to show their payments did not originate from Indian gaming. (*United States v. Jim*, *supra*, 891 F.3d at p. 1251, fn. 23.) The court ruled that the " '[t]ribe produced no documentary evidence substantiating its claim that *sources other than the Bingo Hall* contributed to the [financial] account,' " which was the source of the tribal payments. (*Ibid.*)

Armenta relied on the declaration of Samuel Cohen, the Chumash tribe's legal and governmental affairs officer, who declared, "The Tribe has established a 'general welfare program' which provides general welfare payments to tribal descendants if applied for and receipts provided and approved." He claimed

3

payments to tribal members made from this program are not subject to federal income taxation.

But Cohen did not state the source of the funds to pay these tribal welfare benefits.  If they originated from the profits of Indian gaming, they may be taxable under federal law (*United States v. Jim, supra*, 891 F.3d at p. 1250), " '*no matter the mechanisms devised* to collect the revenue or *administer* the payments.' "  (*Clay v. Commissioner* (11th Cir. 2021) 990 F.3d 1296, 1300, fn. 2, italics added.)  Armenta presented no evidence regarding the source of these tribal benefits.  (*Jim*, at p. 1251, fn. 23.)  But even if these payments are not taxable under federal law, the result does not change.

*Income Considered for Child Support*

The income requirements of federal tax law are not dispositive on the parent's obligation to pay child support.  (*In re Marriage of Alter* (2009) 171 Cal.App.4th 718, 735.)  Instead, the issue is "how much money a parent has available for the support of the minor children."  (*Id*. at p. 734.)  "The Internal Revenue Code does not so much define the term 'income' as identify that which, consistent with prevailing federal tax policy, might be taxed."  (*Id*. at p. 735.)  "In contrast, California's child support statutes are designed to ensure that parents take 'equal responsibility to support their child in the manner suitable to the child's circumstances.' "  (*Ibid*.)  Consequently, "[a] parent may have income that is not taxable but that would be available for support of the child."  (*Ibid*.)  California domestic relations law is independent of federal law.  (*Rose v. Rose* (1987) 481 U.S. 619, 625 [95 L.Ed.2d 599, 607].)

" '[I]ncome is broadly defined for purposes of child support' " (*M.S. v. O.S.* (2000) 176 Cal.App.4th 548, 553), and the

4

" 'judicially recognized sources of income cover a wide gamut' " (*id*. at p. 554). They include income "from whatever source derived" (Fam. Code, § 4058, subd. (a)), and include pensions, social security benefits, unemployment insurance benefits, workers' compensation benefits, etc. (*Id*., subd. (a)(1)).

Funds a tribe pays its members may be considered income a tribal member is required to use to pay support obligations. (*In re Marriage of Jacobsen* (2004) 121 Cal.App.4th 1187, 1189, 1192.) Income for support includes a father's bonuses from an Indian tribe (*M.S. v. O.S.*, *supra*, 176 Cal.App.4th at p. 555), and the reasonable value of rent-free housing on an Indian reservation. (*Stewart v. Gomez* (1996) 47 Cal.App.4th 1748, 1751, 1754). A tribe's per capita payment to parents based solely on their tribal membership is income that can be considered in determining child support obligations. (*Seymour v. Hunter* (1999 Iowa) 603 N.W.2d 625, 626.)

*Exclusions from Income*

Family Code section 4058, subdivision (c) precludes a court from determining child support by including as income payments a party receives from " 'any public assistance program, eligibility for which is based on a determination of need.' " (*Elsenheimer v. Elsenheimer* (2004) 124 Cal.App.4th 1532, 1539.) Armenta claims his tribal benefits fall within this provision.

But this statutory exception is narrow. It involves "need-based public assistance" programs for the poor, such as Supplemental Security Income (SSI) (*Elsenheimer v. Elsenheimer*, *supra*, 124 Cal.App.4th at pp. 1538-1539); "public assistance program[s]" (*In re S.M.* (2012) 209 Cal.App.4th 21, 29) that provide a "minimum level of income for the indigent" (*id*. at p. 30); welfare (*County of Yolo v. Garcia* (1993) 20 Cal.App.4th

1771, 1777); and the other "categor[ical]" assistance programs for the poor (*Schweiker v. Wilson* (1981) 450 U.S. 221, 223 [67 L.Ed.2d 186, 191]; *King v. Smith* (1968) 392 U.S. 309, 313 [20 L.Ed.2d 1118, 1123]; *Vaessen v. Woods* (1984) 35 Cal.3d 749, 754).

Lawmakers knew the meaning of the phrase "public assistance program, eligibility for which is based on a determination of need," because they authorized the creation of such programs to provide relief for extreme poverty to prevent "indigents . . . [from going] hungry, cold and naked" (*City & County of San Francisco v. Superior Court* (1976) 57 Cal.App.3d 44, 47), and to benefit people who typically have " 'no income, no savings or resources.' " (*Watkins v. County of Alameda* (2009) 177 Cal.App.4th 320, 329.) In this context, they intended the term "need" to be tied to "federal official poverty line" standards. (Welf. & Inst. Code, § 17000.5, subd. (c).)

Need-based public assistance programs therefore have uniform income eligibility standards that only people who meet the poverty requirements will qualify for benefits. (*County of San Diego v. Montgomery* (1972) 23 Cal.App.3d 174, 176, 178 [family making $300 a month failed to "demonstrate actual need" because their income exceeded the federal and state Aid to Families with Dependent Children (AFDC) income eligibility standards]; see also *Schweiker v. Wilson, supra*, 450 U.S. at p. 223 [67 L.Ed.2d 186, 191]; *Shea v. Vialpando* (1974) 416 U.S. 251, 253 [40 L.Ed.2d 120, 125]; *Zapata v. Woods* (1982) 137 Cal.App.3d 858, 863; 42 U.S.C. §§ 602, subd. (a)(1)(A)(i); 604, subd. (a)(1), 1381a; Welf. & Inst. Code, §§ 11452, 17000.5.)

The statutory income exclusion does not apply to programs paying unemployment insurance, social security, or workers' compensation benefits. (Fam. Code, § 4058, subd. (a)(1); *In re*

*S.M.*, *supra*, 209 Cal.App.4th at pp. 28, 30.) Those programs provide important income maintenance benefits for their recipients, but they do not qualify as the indigent "need based" programs the Legislature intended. (*S.M.*, at pp. 28, 30; *County of San Diego v. Montgomery*, *supra*, 23 Cal.App.3d at p. 178.)

Lawmakers knew a broad definition of need-based programs could be a windfall for a parent who owes support and a detriment to the child who needs it. Their goal was to help parents whose support obligations impacted their financial survival (*County of Yolo v. Garcia*, *supra*, 20 Cal.App.4th at p. 1777), and who qualify for programs that only pay " 'the minimum necessary for the subsistence of that individual' " (*Elsenheimer v. Elsenheimer*, *supra*, 124 Cal.App.4th at p. 1539).

Armenta has the burden of proof to show he fell within this statutory provision. (Evid. Code, § 500.) He did not prove his tribal payments were need based for his "minimum necessary" subsistence. Cohen's declaration does not show that the tribal general welfare benefits are restricted for poor or low-income tribal descendants and are based on a need-based minimum subsistence level to qualify for the payments. Cohen did not describe why Armenta was qualified to receive these benefits. The trial court could reasonably find his declaration was conclusory and unpersuasive. (*Id.*, § 412.)

Section 3(b) of the Chumash tribe's General Welfare Ordinance provides, " 'The Business Committee and General Council shall periodically review the facts, circumstances and needs of the Tribe and its membership, and make modifications as needed to ensure that the Program continues to serve the *general welfare of the Tribe.* All findings are based on the Business Committee and the General Council's unique knowledge

7

of Tribal culture, tradition, historic barriers, needs and long term goals of self-determination, and are made in *the sole discretion* of the Business Committee and General Council taking these factors into account.' " (Italics added.)

These general goals support the "general welfare of the Tribe." But they do not set forth specific standards for awarding *need-based* benefits to individuals, set specific income level limits for tribal payments, or explain how tribal members making in excess of $100,000 in annual salary qualify as persons who meet need-based standards. Armenta did not call Cohen or members of the business committee or general council to testify whether there are specific low-income level requirements to qualify for the tribal payments.

Armenta's annual income is $114,000. Pateras and the Attorney General note, because Armenta's income is so large, the trial court could reasonably infer "that eligibility for the Chumash general welfare program is based on being a descendant of the Tribe, and not based on any showing of financial need." The legislative purpose of the statutory exclusion was to protect the poor from being financially overburdened, but not to allow parents with large incomes to escape their child support obligations. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 293.)

Armenta could have testified on the requirements for receiving these tribal payments at the February 6th hearing. But when the court asked his counsel what he wanted to present, counsel answered, "I'd rather make an argument *than give evidence*." (Italics added.) Armenta did not show how and why he received tribal payments or that he received them solely based on his *personal* financial need. The failure to present evidence on

8

these issues supports the trial court's decision to reject his claim. (Evid. Code, § 412; *Orange County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 257, 362 [" 'If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust' "].) Here there was no such evidence.

*The Chumash Tribe's Amicus Brief*

The Chumash tribe claims it distributes money to members to advance the goals of promoting housing, education, and tribal culture, and its benefits are need based. It does not claim that it has low-income eligibility standards to qualify for its benefits, and does not contend that Armenta's tribal benefits qualify as survival or minimal subsistence payments.

Instead, the Chumash tribe argues that "there is nothing in Family Code Section 4058 that limits need solely to 'financial need,' let alone to specific financial income thresholds."

But in interpreting legislative intent, all relevant statutory provisions "should be read together," and the statutory interpretation cannot lead to an absurd result. (*Jurcoane v. Superior Court* (2001) 93 Cal.App.4th 886, 893.) The Legislature has placed specific indigency and low-income financial limits to qualify for need-based public assistance programs (Welf. & Inst. Code, §§ 11450, 11450.022, 11450.023, 11452; *McCormick v. County of Alameda* (2011) 193 Cal.App.4th 201, 211; *County of San Diego v. Montgomery*, *supra*, 23 Cal.App.3d at pp. 178-179); and the Family Code section 4058, subdivision (c) exemption from income is qualified by subdivision (a)(1), which expressly includes as income benefits from those public assistance programs that are not exclusively dedicated to providing benefits for the poor.

Those who have qualified for this income exemption have shown they qualified for the low income standards of their need-based programs. (*County of Yolo v. Garcia*, *supra*, 20 Cal.App.4th at p. 1777.)

If there are no income or financial limits to qualify for its tribal benefit program, then that program is not based on "actual need." (*County of San Diego v. Montgomery, supra*, 23 Cal.App.3d at p. 178.) The Legislature could not have intended to exempt from income Armenta's $5,000 monthly tribal benefits when it expressly includes as income for determining support 1) the unemployed workers' unemployment benefits and 2) the retired workers' social security benefits that are much lower than Armenta's monthly tribal benefit. (Fam. Code, § 4058, subd. (a)(1).) And given the statutory purpose to benefit children, lawmakers would not accept the Chumash tribe's attempt to *shield* Armenta's $60,000 in annual tribal benefits from his obligation to support his child. (*In re Marriage of Alter*, *supra*, 171 Cal.App.4th at p. 734.)

The Chumash tribe argues that under tribal law it has discretionary authority to decide what are need-based benefits. But that is not dispositive for California courts. (*In re Marriage of Jacobsen*, *supra*, 121 Cal.App.4th at pp. 1189, 1192.)

*Conflict with Federal Law and Policy*

Armenta and the Chumash tribe contend the trial court's decision to include the tribal payments as income violates federal law and a federal interest to protect Indian tribes. They claim the state court lacks jurisdiction to override these federal interests. But the interests of states to enforce their own domestic relations laws do not violate or conflict with federal law or policy. The United States Supreme Court has held the subject

10

of domestic relations law " 'belongs to the laws of the States *and not to the laws of the United States.'* " (*Rose v. Rose*, *supra*, 481 U.S. at p. 625 [95 L.Ed.2d 599, 607], italics added.)  When faced with this issue, the Iowa Supreme Court held a " 'per capita' payment to a Native American by reason of tribe membership should be considered income and included in computing his child support obligation." (*Seymour v. Hunter*, *supra*, 603 N.W.2d at p. 626.)

Armenta and the Chumash tribe claim the trial court's decision "ignores" the "sovereign status of the Chumash Tribe." But the court was not telling the Chumash tribe how to regulate or classify its property.  It did not interfere with any tribal customs or procedures or order the Chumash tribe to do anything.  It was not exercising its jurisdiction over the Chumash tribe.  Instead, the court was merely deciding the rights and obligations of the parties before it under California law. " '[W]hen a Native American . . . undertakes to avail himself or herself of the services of a state court in a domestic relations matter, . . . the state court has jurisdiction to act and to grant whatever relief is contemplated by the action initiated by the Native American.' " (*In re Marriage of Jacobson*, *supra*, 121 Cal.App.4th at p. 1193.)  Where tribal customs or policies contravene state law in domestic relations cases, California law applies.  (*Id*. at pp. 1192-1193; *Rose v. Rose*, *supra*, 481 U.S. at p. 625 [95 L.Ed.2d 599, 607].)

We disagree with Armenta's claim that there is a conflict between the Chumash tribe's interests and those of California courts.  The Chumash tribe's general welfare program is for tribal members and descendants.  This of course includes the children of the tribe.  Adequate support for the children

11

guarantees they will carry on the culture and tradition of the Chumash tribe consistent with section 3(b) of the Chumash tribe's ordinance.

*Other Issues*

*Right to an Evidentiary Hearing*

Armenta contends the trial court erred by not holding an evidentiary hearing on February 6, 2024.

A party in a child support case has a right to "an evidentiary hearing" (*In re Marriage of Brinkman* (2003) 111 Cal.App.4th 1281, 1288), unless there is "good cause" for not having one.  (Fam. Code, § 217, subds. (a) & (b).)  Here there was an evidentiary hearing on October 12, 2023, and the record of the February 6th hearing does not support Armenta's contention. The court told counsel, "[I]f you want to call a witness, call a witness."  "*Your client is entitled to testify today if he wants to.*" (Italics added.)  "*You're not being deprived of an evidentiary hearing.*"  (Italics added.)  Armenta's counsel responded, "I'd rather make an argument *than give evidence.*"  (Italics added.) There was no error.  (*Cushman v. Cushman* (1960) 178 Cal.App.2d 492, 498.)

*Not Enforcing a Notice to Appear*

Armenta claims the trial court erred by not enforcing his prior September 2023 notice to appear to require Pateras to attend as a "witness" at the February 6, 2024, hearing.  The notice to appear initially involved the September 27, 2023, hearing, and Armenta claims it applied to all hearings.

At the January 26, 2024, hearing, counsel presented oral argument.  Pateras was not present.  The trial court granted Armenta's request to continue the hearing to February 6. Armenta's counsel did not request the court to order Pateras to

appear at the February 6th hearing and the court did not order her to appear.  At the February 6th hearing, Armenta's counsel said he "assumed" Pateras would be present.  The court ruled counsel failed to give proper notice to require her appearance at the February 6th hearing.

Pateras claims she complied with the notice to appear and testified at the October 12, 2023, hearing.  She argues that the hearings following October 12 show she was not required to attend the February 6th hearing.  Pateras contends: 1) those follow-up hearings involved legal arguments and her testimony was not required or appropriate there (*Summers v. A.L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1160); 2) Armenta's counsel did not object to her absence at the follow-up hearings or request the court to order her to appear; 3) Armenta's counsel impliedly consented to only her counsel's appearance (*Stanley v. Superior Court* (2012) 206 Cal.App.4th 265, 291); 4) her counsel's presence was sufficient given the nature of the hearings; 5) the court did not require her appearance; and 6) given this history, Armenta's counsel's request that she appear at the February 6th hearing, made at the day of that hearing without advance notice, was a surprise request the court properly rejected.  (*Doe v. University of Southern California* (2016) 246 Cal.App.4th 221, 242; *Parker v. Dingman* (1975) 48 Cal.App.3d 1011, 1018.)

After the evidentiary hearing of October 12, 2023, the trial court held follow-up hearings on November 15, 2023; December 12, 2023; January 26, 2024; and February 6, 2024.  Armenta did not produce a reporter's transcript or a settled statement for the hearings on September 27, October 12, November 15, and December 12, 2023.  Because the record is incomplete, we presume the missing portions support the trial court's decisions.

13

(*Null v. City of Los Angeles* (1988) 206 Cal.App.3d 1528, 1532.) Armenta did not produce a complete record of the hearings following October 12, 2023. The record is inadequate to support a challenge to Pateras's position on appeal. (*Ibid.*) Moreover, the court's February 6th findings show that counsel's request that Pateras appear on that date was a surprise request. There is no showing of reversible error because the court continued the February 6th hearing to another date. (*Jordan v. Malone* (1992) 5 Cal.App.4th 18, 21.)

*Substantial Evidence*

Armenta claims the trial court erred in making its orders. But substantial evidence supports them. We draw all reasonable inferences in support of the orders; we do not weigh the evidence, decide credibility, or resolve evidentiary conflicts. (*In re Marriage of Williams* (2007) 150 Cal.App.4th 1221, 1234; *Pettus v. Cole* (1996) 49 Cal.App.4th 402, 425; *Montez v. Superior Court* (1992) 4 Cal.App.4th 577, 583.)

Pateras notes the trial court relied on her income and expense declaration and properly considered the DissoMaster calculations and statutory guidelines in determining Armenta's child support obligations. (Fam. Code, §§ 4055, subd. (a), 4057, subd. (a); *In re Marriage of Rodriguez* (2018) 23 Cal.App.5th 625, 636; *In re Marriage of Henry* (2005) 126 Cal.App.4th 111, 121-122.)

The trial court resolves evidentiary conflicts. (*In re Marriage of Williams, supra,* 150 Cal. App.4th at p. 1234; *Montez v. Superior Court, supra,* 4 Cal.App.4th at p. 583.) Armenta claims Pateras was not credible. But the trial court decides that issue. The court implicitly rejected Armenta's claim that Pateras understated her income, and it found a current need for higher

support.  Armenta has not shown how a lower support order would meet the child's needs (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1051; *In re Marriage of Leonard* (2004) 119 Cal.App.4th 546, 561), and his failure to present a record of the October 12th evidentiary hearing undermines his claims.  (*Null v. City of Los Angeles*, *supra*, 206 Cal.App.3d at p. 1532.)

*Not Ruling on New Impeachment Evidence*

Armenta claims the trial court erred by failing to rule on his new impeachment evidence at the February 6, 2024, hearing. He claims it shows Pateras's prior income and expense declaration and DissoMaster calculations were incomplete and incorrect.

But Armenta did not present evidence at that hearing.  His counsel *argued* that Pateras needed to answer questions about her income and resources so he could show she did not disclose all her sources of income.  But the trial court could reasonably find it was premature to make findings on his allegations based on documents he just filed a day before the hearing.

Armenta omitted the relevant facts.  (*In re S.C.* (2006) 138 Cal.App.4th 396, 401-402.)  The trial court did not make final rulings on whether Pateras's DissoMaster calculations were impeached by his new allegations because the February 6th hearing *was not the final hearing* in this case.  The court scheduled a hearing for June 5 to consider Armenta's new allegations and determine "if there's something wrong with the Disso[M]aster [calculations]."

The trial court has discretion to bifurcate issues (*Downey Savings & Loan Assn. v. Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072, 1086), and this procedure accommodated the interests of the child and Armenta.  Because Armenta's income

15

was high and his current child support level was too low, on February 6, the court raised his support obligation to give the child current adequate support. Because Armenta claimed he needed more information from Pateras to show her income was higher than she claimed, the court reasonably set a June hearing to resolve that issue. (*Ibid*.)

But instead of appearing at that hearing, Armenta filed an appeal in March. He prematurely and incorrectly claims the court denied him a hearing on his allegations. Nor may he claim error for not holding a hearing on his new evidence. The court scheduled a hearing for that purpose, and he prevented it from proceeding. (*Cushman v. Cushman, supra*, 178 Cal.App.2d at p. 498.) Because he had a trial court remedy that he did not use, we will not speculate on how the trial court would have ruled. Consequently, it is premature to decide his claims about his new evidence. (*Jordan v. Malone, supra*, 5 Cal.App.4th at p. 21.)

We have reviewed Armenta's remaining claims and conclude he has not shown grounds for reversal.

DISPOSITION

The orders are affirmed. Costs on appeal are awarded in favor of the respondents.

CERTIFIED FOR PUBLICATION.

GILBERT, P. J.

We concur:

YEGAN, J.                    BALTODANO, J.

16

James F. Rigali, Judge

Superior Court County of Santa Barbara

_____

Richard I. Wideman for Defendant and Appellant.

Kirker/Wright Law Group, APC and Vanessa Kirker Wright; Law Office of Channe G. Coles and Channe G. Coles for Plaintiff and Respondent.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown and Nicolas P. Rossenblum, Deputy Attorneys General, for Intervener and Respondent.

Yoder & Langford, P.C., Linus Everling and Robert R. Yoder for Santa Ynez Band of Chumash Mission Indians as Amicus Curiae.